## THE INDIANAPOLIS ABATTOIR COMPANY v. TEMPERLY.

[No. 19,859.  Filed October 17, 1902.  Rehearing denied January 9, 1903. ]

LANDLORD AND TENANT.—*Natural Gas Explosion.*—*Liability of Landlord.*—*Negligence.*—Where a landlord occupied a portion of a building, and piped it for natural gas for its own benefit solely, and not for the use of the tenant, it was bound to use ordinary care to prevent the escape of gas therefrom; and where such pipes were defective and leaking, and known by the landlord to be in such defective condition, the landlord is liable for injury to a tenant, who was without fault, for an explosion resulting from such leakage.  *pp. 653, 654.*

SAME.— *Natural Gas Explosion. — Damages.— Pleading. — Negligence. —* An allegation in a complaint in an action by a tenant against the landlord for damages resulting from an explosion of natural gas which escaped from pipes placed in the building for the use of the landlord, that plaintiff without negligence and not knowing that gas had escaped and filled the room, and not knowing the danger of so doing, entered the room in which the gas was confined, was a sufficient averment as to knowledge on the part of plaintiff.  *pp. 654, 655.*

SAME.—*Natural Gas Explosion.*—*Assumption of Risk.*—*Pleading.*—In an action by a tenant against a landlord for damages from an explosion of natural gas which had escaped from pipes placed in the building by the landlord for his own use and convenience, and not for the benefit of the tenant, the doctrine of assumed risk does not apply, and it is sufficient to allege that the injury occurred without contributory fault on the part of plaintiff.  *p. 655.*

TRIAL.—*Interrogatories.*—The answer of the jury to interrogatories that there was "no evidence" of the facts so expected to be proved, was equivalent to a finding against the party propounding the interrogatories.  *pp. 655, 656.*

TRIAL.—*Interrogatories.*—*Verdict.*—*Conflict.*—An answer to an interrogatory will not overcome the general verdict on account of conflict therewith, where it is also in conflict with another interrogatory. *pp. 657, 658.*

LANDLORD AND TENANT.—*Natural Gas Explosion.*—*Notice.*—Where a cold storage company rented a room in which it had gas-pipes placed for its own use in another part of the building, and had notice that gas was escaping therefrom, its duty to repair the leaks or turn off the gas did not depend upon its superior knowledge or means of knowledge as to the condition of things in the tenant's room. *pp. 658, 659.*

From Marion Superior Court; *J. L. McMaster*, Judge.

Action by Harry H. Temperly against the Indianapolis Abattoir Company for damages from an explosion of natural gas. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Affirmed.*

*W. H. H. Miller, J. B. Elam, J. W. Fesler* and *S. D. Miller*, for appellant.

*W. N. Harding, A. R. Hovey* and *C. S. Wiltsie*, for appellee.

DOWLING, C. J.—The appellant, which was the defendant below, was the owner of certain grounds and structures in the suburbs of the city of Indianapolis, one of which buildings was used for the purposes of cold storage. It was divided into rooms or compartments, which were rented to divers persons for the storage and preservation of meats and other articles by the use of cold air. The several buildings on the grounds were detached from each other, and separated by considerable spaces; one of them, quite remote from that used for cold storage, being occupied by appellant as its office. The appellant caused gas-pipes to be run up the side of the cold storage building, and through the lofts of the compartments rented to the tenants of these rooms, to its office, for the exclusive use of such office. The appellee rented and occupied one of the rooms in the cold storage building for the storage of fresh meats. On February 13, 1895, the room so used by the appellee had, without

his knowledge, become filled with natural gas which escaped from the said pipes at some point on the said premises. The appellee on entering the room on the morning of that day, and while it was yet dark, struck a match to light a candle. A violent explosion from the ignition of the gas instantaneously took place, and the appellee was severely injured thereby. He brought suit to recover damages for the injuries alleged to have been sustained, charging in his complaint that the accident was occasioned by the negligence of the appellant in so constructing and maintaining the gas-pipes that gas leaked from them and escaped into the room rented by him. He alleged that the appellant had notice of the defective condition of the said gas-pipes, but that he had not, and that the accident and injury occurred without fault on his part. The answer of the appellant was a denial. The case was tried by a jury, which returned a general verdict for the appellee, with answers to a great number of questions of fact. The court overruled the motions of the appellant for judgment in its favor on the answers to the questions of fact and for a new trial. Judgment was rendered on the verdict and the abattoir company appealed.

We are asked to reverse the judgment because of the supposed errors of the trial court in its rulings on the demurrer to the complaint, and on the motions for judgment and for a new trial.

The first objection taken to the complaint is that it does not appear that the appellant, as landlord, violated any duty which it owed to the appellee as its tenant. While it is true that in this State a landlord can not be compelled to make repairs in the absence of an agreement to do so, and is not responsible for injuries resulting from such failure to repair, yet it is equally well settled that where he occupies a portion of the premises himself he is not permitted to use such parts in such manner as to injure his tenant. In the present case it is alleged that the appellant piped the

premises for its own benefit solely, and not for the convenience or use of the appellee. It is perfectly clear that in so doing and in maintaining the gas-pipes it was bound to use ordinary care to prevent the escape of gas from them, and consequent injury to the appellee. It is averred that the gas-pipes laid down and maintained by the appellant for its own use were defective and leaking, and that this fact was known to the appellant. The appellant must be presumed to have known the dangerous qualities of escaping natural gas, and if, with the knowledge that it was escaping, it permitted such leakage to continue until an explosion took place, the injured tenant being without fault, the landlord would be liable. *Peil* v. *Reinhart,* 127 N. Y. 381, 27 N. E. 1077, 12 L. R. A. 843; *Coupe* v. *Platt,* 172 Mass. 458, 52 N. E. 526, 70 Am. St. 293.

The appellant owed to the appellee the duty to use ordinary or reasonable care to prevent the escape of gas from its pipes in such quantities as to become dangerous to life or property. *Kemmell* v. *Burfeind,* 2 Daly (N. Y.) 155; *Mississinewa, etc., Co.* v. *Patton,* 129 Ind. 472, 28 Am. St. 203 and note; *Consumers Gas, etc., Co.* v. *Perrego,* 144 Ind. 350, 32 L. R. A. 146; *Richmond Gas Co.* v. *Baker,* 146 Ind. 600, 36 L. R. A. 683; *Citron* v. *Bayley,* 36 Hun, App. Div., 130, 55 N. Y. Supp. 382; *Consolidated Gas Co.* v. *Crocker,* 82 Md. 113, 33 Atl. 423, 31 L. R. A. 785; *Hunt* v. *Lowell Gas Light Co.,* 3 Allen (Mass.) 418; *Kibele* v. *City of Philadelphia,* 105 Pa. St. 41; *Parry* v. *Smith,* L. R. 4, C. P. D. 325, 41 L. T. (N. S.) 93; *Koelsch* v. *Philadelphia Co.,* 152 Pa. St. 355, 25 Atl. 522, 18 L. R. A. 759, 34 Am. St. 653.

If it was necessary to aver want of knowledge of the escape of the gas on the part of the tenant, we think the allegation on that subject was sufficient. The averment was "that appellee, on the day of his injury, without negligence, and not knowing that said gas had escaped and filled his room, and not knowing the danger of so doing, entered

Indianapolis Abattoir Co. *v.* Temperly.

the room in which said gas was confined," etc. We are of the opinion that in cases of this character the doctrine of assumed risk does not apply, and that it is sufficient to allege that the injury occurred without contributory fault on the part of the appellee. Besides, nothing in the complaint shows that the appellee knew that the pipes were defective, or that any gas had escaped from them, and we can not presume, from anything we find in the complaint, that he had such knowledge. The complaint was sufficient, and the demurrer to it was properly overruled.

In the discussion of the motion for judgment for the appellant upon the answers to the interrogatories, we have been referred by counsel to no answer which necessarily overthrows the general verdict. If it appeared from an answer that at the time of the explosion the appellee was not the tenant of the appellant, or that the appellant maintained no gas-pipes upon its premises, or that no leak existed in its pipes, or that the appellee, when he struck the light, knew that the room contained gas to a dangerous extent, or that the appellee was not injured by the explosion, such an answer would have been irreconcilable with the general verdict upon any theory, and would have overthrown it. But this is not the character of the answers upon which we are asked to reverse the judgment of the trial court. The plugging of a disused tin spout or pipe through which another tenant thought that escaping gas from outside the cold storage building or some other unpleasant odor found its way into the room occupied by him, is relatively of no importance in this case. A plug in that pipe did not stop any leak in the gas-pipes, and it was not the exercise of ordinary care to attempt to shut off the escaping gas by that expedient.

We set out a few of the interrogatories relied upon by appellant, with the answers to the same: "(17) Did said Bryan [another tenant of the cold storage building, occupying the compartment next to that held by the appellee] ask

for a workman to stop a pipe in his room through which said Bryan believed gas might be coming into his room? A. Asked Mr. Alerdice [the president of the appellant] to have leak stopped." "(20) Did the abattoir company send one George Wonders to do such work as said Bryan wanted done, in response to his request? A. Yes." "(29) After said plugging, did the officers of the abattoir company believe that there was no further danger from gas? A. No evidence. (30) Did said officers have good reason so to believe? A. No evidence." "(46) Did any officer of the abattoir company have any means of knowing that there was gas in the particular room where plaintiff kept his meat on the morning of the accident to plaintiff? A. No evidence." "(51) Did the officers of the abattoir company go about the outside of its building and examine by the sense of smell to find escaping gas? A. Yes. (52) Upon such examination, was any place discovered near the buildings where escaping gas could be smelled? A. No evidence."

These answers, so far from supporting the proposition that judgment should have been rendered for the appellant, strongly tend to sustain the general verdict. They show that a short time before the accident the appellant had notice that gas was escaping in the vicinity of the warehouse and that the president of the company was notified to have "the leak stopped." They show what steps were taken by the appellant to protect its tenants from the dangers of escaping gas. The jury may have thought, and doubtless did believe, that these measures, both of investigation and prevention, were crude and grossly inadequate in view of the possible dangers involved. Interrogatories numbered twenty-nine and thirty were intended to elicit answers favorable to the appellant. The response of the jury that there was "no evidence" of the facts so expected to be proved was in each instance equivalent to a finding against the appellant.

Indianapolis Abattoir Co. v. Temperly.

If, in answer to the forty-sixth interrogatory, the jury had said that "no officer of the abattoir company had any means of knowing that there was gas *in the particular room* where plaintiff kept his meat on the morning of the accident," we do not perceive how that answer would have aided the appellant. Its liability did not depend on notice of the fact that on the morning of the accident gas had accumulated in that room, but upon its previous knowledge that an insidious and deadly fluid had escaped at some point, probably upon its premises; that it was flowing in greater or smaller quantities by day and by night; that it was liable to penetrate any room in the building, and accumulate there when the room was tightly closed, and to ignite and explode with terrific force upon contact with the flame of a match or candle.

"(38) Was there gas in plaintiff's room when he opened the door on the morning of the accident in such quantities as to explode when fire came in contact with it? A. Yes. But the door was opened by Thorne. (39) Could such gas have been readily smelled when the door was opened by any one giving attention to his surroundings? A. Yes." These answers prove no fact inconsistent with the general verdict. They establish the charge of the complaint that the room rented by the appellant to the appellee had become filled with gas, and that it was ready to explode upon contact with fire. They state that when the door of the room was opened by any one giving attention to his surroundings, gas could readily have been smelled. But they disclose, also, that the door was opened, not by the appellee, but by a man named Thorne. Just what was meant by "giving attention to his surroundings" is not evident. It would seem to indicate something more than the ordinary care which a tenant is required to take in entering a room rented to him. The tenant was not obliged to make tests for the presence of gas or anything else. He had the right to presume that his

room was free from noxious substances, and to enter it freely. His attention might have been fixed upon his business; his sense of smell, or ability to investigate odors, may have been obtuse. But, if any conclusion favorable to the appellant could have been drawn from these answers, their effect was completely neutralized by the answer to the forty-fourth interrogatory, which seems to be directly contradictory of the answer to number thirty-nine. The former was as follows: "(44) At the time the plaintiff lighted the match, could he have smelled gas if he had been giving attention to his surroundings? A. No." Even if the answer to the thirty-ninth interrogatory had been of controlling effect if standing alone, its inconsistency with the forty-fourth would have left the verdict unaffected. *Dickey* v. *Shirk,* 128 Ind. 278; *Hellonville Mfg. Co.* v. *Fields,* 138 Ind. 58; *Ohio, etc., R. Co.* v. *Heaton,* 137 Ind. 1.

All of the answers to the questions of fact submitted to the jury are easily reconciled with the general verdict without the aid of the evidence admissible under the issues which may be presumed to have been presented to the jury. *Louisville, etc., R. Co.* v. *Creek,* 130 Ind. 139, 14 L. R. A. 733; *Rogers* v. *Leyden,* 127 Ind. 50; *British-American, etc., Co.* v. *Wilson,* 132 Ind. 278.

The motion for a new trial presents but two questions: (1) That of the sufficiency of the evidence to sustain the verdict; and (2) that of the correctness of the instructions referred to in the motion. A very careful reading of the record satisfies us that there was not a total failure of proof upon any issue in the cause. The knowledge of the appellant of the escape of gas, the sufficiency of the means adopted to discover and stop it to relieve the appellant of the charge of negligence, the knowledge or ignorance of the appellee of the perils of the situation when he entered his room,—all of these were matters of fact upon which there was more or less evidence before the jury. This being the state of the record, the verdict must stand.

Indianapolis Abattoir Co. v. Temperly.

Neither the third instruction nor the seventh was erroneous because of its omission of the statement that the appellee could not recover unless he proved that he did not voluntarily assume the risk arising from the escape of the gas. The question of assumption of risk was not involved.

The eighth instruction requested by the appellant, contained these words: "Unless the defendant had some superior knowledge, or means of knowledge, not possessed by the plaintiff as to the condition of things in his room, it was under no duty to make any changes with respect to gas about its premises." The duty of the appellant did not depend upon its superior knowledge, or means of knowledge, as to the condition of things in appellee's room. If it had notice that gas was escaping from its pipes on its premises in the vicinity of the building used for cold storage, in which appellee had a rented room, and could foresee that it was likely to enter that building and appellee's room, its duty to its tenant required that it should find the leak and stop it, or cause the gas to be shut off until the leak could be found, or to take such other precautions to prevent injury to its tenant as a person of ordinary prudence, dealing with so dangerous an agent as natural gas, would adopt.

The modifications of instructions numbered twelve and thirteen by the court were reasonable and proper. Without such corrections, these instructions misstated the law, and did not fairly present the issues to which the law so stated was intended to apply. We find no error in the action of the court in refusing to give these instructions as presented, or in modifying them as it did.

There is no error in the record. Judgment affirmed.