HOOSIER CARDINAL CORPORATION *v.* BRIZIUS.

[No. 19,715. Filed June 25, 1964. Rehearing denied August 11, 1964. Transfer denied September 30, 1964.]

*Bamberger, Foreman, Oswald & Hahn,* of Evansville, for appellant.

*Russell S. Armstrong,* of Evansville, for appellee.

COOPER, J.—This matter comes to us from the Posey Circuit Court wherein the appellee, Wilbur Brizius, brought an action against the appellant, Hoosier Cardinal Corporation, to recover damages for personal injuries alleged to have been caused when the appellee fell through a glass sky-light on top of a paint-spray booth located on the property of said appellant while engaged in removing a conveyor as an employee of Karl Conners of Machinery Transfer Company.

The cause was submitted to a jury which returned a verdict for the appellee, Wilbur Brizius, and against the appellant, Hoosier Cardinal Corporation, upon which the court entered judgment.

The appellant filed its motion for a new trial which was overruled, and the overruling of said motion is assigned as error in this court.

The appellant's second amended complaint charged, in substance, that the appellant was a corporation organized under and by virtue of the laws of the State of Indiana with its principal place of business located at Evansville, Vanderburgh County, Indiana; that on or about the 25th day of June, 1957, it was the owner and in possession and control of a large brick manufacturing-type building located on West Eichel Street in the City of Evansville, State of Indiana; that on said date appellant was in the process of dismantling and removing certain heavy machinery and fixtures from the interior of said building; that the said machinery and fixtures had been previously sold by the appellant to divers purchasers and were being removed by the agents of the various buyers thereof for shipment and transfer to other places; that the appellee herein was an employee of Karl Conner of Machinery Transfer Company, and, at the time he

received the injuries complained of, was engaged as such employee in removing a part of the equipment from said building; said equipment being directly over a paint-spray booth; that all manufacturing operations had previously been discontinued by the defendant; that in approximately the center of said building there was located an enclosed paint-spray booth which was approximately twenty (20') feet long by eight (8') feet wide and about fifteen (15') high; that at the time and place mentioned therein, the appellee was engaged in removing a certain conveyor from said building, which was located to one side and above said paint-spray booth, and, while so engaged, the appellee found it necessary to step on top of the paint-spray booth in order to move to a different position with respect to his work in removing the conveyor; that in so doing, he fell through the glass sky-light of the said booth to the concrete floor, causing certain personal injuries; that at the time the appellee stepped on top of the booth, he was not aware of the fact that the top was made of glass, but that, on the contrary, the top gave the appearance to the appellee of being strong and of sufficient strength to withstand the weight of his body. Appellee charged appellant in his complaint with failing and neglecting to warn the appellee of the dangerous and unsafe condition of the top of the paint-spray booth, in failing and neglecting to provide suitable warning signs for the benefit of appellee indicating that the top of the paint-spray booth was made of glass and would not support the weight of an individual who might stand on the same; in failing and neglecting to cover the top of the paint-spray booth with a suitable roof strong enough to bear the weight of any workman who would be using the same as a platform in connection with the dis-

mantling of the interior of said building; and in failing and neglecting to post sufficient signs or otherwise notify the appellee that the paint-spray booth was not to be used by workmen as a platform or for any purpose in connection with the dismantling of said machinery and equipment; that as a result of the fall, appellee suffered serious and permanent injuries to his damage in the sum of Seventy-Five Thousand ($75,000.00) Dollars.

Among other specifications, appellant's motion for a new trial challenges the action of the court in refusing to direct a verdict for the appellant.

The record reflects that there is no dispute as to the facts before us. The pertinent evidence in the record favorable to the appellee reveals, in substance, that the appellant, Hoosier Cardinal Corporation, ceased their manufacturing business, and, thereafter, proceeded to sell their machinery located in their plant at Evansville, Indiana. The sale was of an auction type, conducted by auctioneers. The record reveals that the paint-spray booth involved herein was sold to Ward's Body Shop of Conway, Arkansas, and the conveyor system involved herein was sold to the Crown Machinery Company of St. Louis. Under the terms of the sale, it appears that the purchasers of the various items of equipment were required to move the purchased equipment at the purchaser's risk and expense; that one Karl N. Conners of Machinery Transfer Company of Evanston, Illinois, a machinery mover and dismantler, was employed to dismantle and remove a conveyor system known as a 458 webb-chain conveyor which was located on the premises of the Hoosier Cardinal Company; that the conveyor was located approximately four feet from the north side of the paint-spray booth and was per-

haps four feet higher than the top of the booth, situated in the building owned by the appellant; that the conveyor was to be removed by the use of ladders and other equipment usually used and furnished by the contractor in dismantling or removing the said machinery, and there was no occasion for any of the employees of the said Karl Conners Company of Machinery Transfer Company to be on top of the paint-spray booth while performing work in removing the said conveyor.

It also appears that Karl Conners of Machinery Transfer Company had not been engaged by Ward's Body Shop to remove the paint-spray booth.

The record discloses that the appellee, Wilbur Brizius, an experienced iron-worker, climbed to the top of the paint-spray booth by the means of two step-ladders and was using the said booth as a working platform in connection with his work of cutting a section of the conveyor system which was being dismantled by the Machinery Transfer Company when he fell through the section of the glass panel located in the roof of said booth. The undisputed evidence conclusively shows that the top of the booth was not constructed for the purpose of constituting a safe working platform and that the appellee had knowledge of the type of structure but that he made no effort whatsoever to ascertain whether or not the top of the structure would support him or whether there were any defects whatsoever on the top of the spray booth; that he made no examination to ascertain the type of construction of the roof of the structure or whether or not there were glass sky-lights or panels located in the top of the structure, although the top of the booth was covered with dust, dirt and debris.

Appellee's employer testified that appellee had no occasion to go on top of the spray booth; that it was not necessary in the performance of the work of removing the conveyor and that the appellee was not authorized to go on top of the paint-spray booth nor did he give his consent to the appellee to go on top of said booth, and that if he, the employer, had known such fact, he would have terminated his services.

The primary and crucial question appearing in this appeal involves a consideration of the duty, if any, the appellant, under the particular circumstances here apparent, owed to the appellee and, if such duty was existent, whether the same was violated by appellant. The question encompasses the further investigation of the status occupied by appellee in coming upon the premises of appellant, that is, whether appellee was there as a trespasser, a licensee by permission or passive acquiesence, or as a licensee by inducement or invitation, express or implied, of appellant, since appellant's duty to appellee under the circumstances may be to some extent substantially dependent upon such status.

It is apparent, of course, that appellee was not upon the premises as a trespasser. In accounting for appellee's presence in appellant's building, it becomes necessary to trace the circumstances shown by the evidence. In the record now before us, as we have heretofore stated, the appellant possessed varied items of equipment located and installed in its building. This equipment was sold by appellant at auction to various purchasers who were required by the terms of the sale to remove the purchased equipment at their own risk and expense. One of the items purchased by Crown Machinery Company of St. Louis, was a conveyor system identified as a 458 webb-chain

conveyor. This purchaser of the conveyor apparently engaged one Machinery Transfer Company to dismantle and remove the conveyor. The latter was the employer of appellee, who, as such employee, was cutting a section of the conveyor system when he sustained the injuries complained of. Nothing appears in the evidence showing any contractual relationship between appellant and the said Machinery Transfer Company or the appellee. Insofar as revealed by the evidence, appellant's only contractual connection was with the purchaser of the conveyor system who undertook to remove it at its own risk. Whether appellant had actual knowledge of appellee's presence in the building is undisclosed by the evidence.

It seems clear that the contract between appellant and the purchaser of the conveyor system was for their mutual benefit, the purchaser getting the benefit of the material purchased at auction and the appellant receiving the benefit of the sale and the removal of the equipment from its building. Under the circumstances, then, the purchaser undoubtedly became an invitee upon appellant's premises for the purpose of removing the materials purchased. It may be implied, we think, from the circumstances and the contract of sale, that the invitation to enter the premises for the involved purpose was not exclusively personal to the purchaser but extended, by implication, to the contractor employed by the purchaser to do the actual, manual removal of the conveyor, including the appellee, as the employee of the contractor. See *Chicago, etc., R. Co.* v. *Pritchard* (1906), 168 Ind. 398, at 404, 79 N. E. 508, referring to the case of *Heaven* v. *Pender* (1883), 11 Q. B. D. 503.

It must be concluded, therefore, that appellee was in appellant's building, at the time of the occurrence leading to his injuries, as an invitee by implication for the sole purpose of doing the necessary things required of him in removing the purchased equipment. The duty of appellant to appellee, as such invitee for said purpose, was an affirmative duty to exercise ordinary care to keep the property in a reasonably safe condition coextensive with the purpose and intents of the implied invitation.

It is evident that under the implied invitation extended by appellant to appellee, the latter was invited to come into appellant's building to remove the conveyor system and such invitation carried with it the duty, upon which a reasonable reliance could be placed by appellee, that the building and the interior appliances, and structures, necessary or required for appellee's use or employment in the doing of his work in removing the conveyor system, were in a reasonably safe condition for such purpose. Such duty, it seems, under the circumstances here apparent from the evidence, did not include an unusual, unanticipated, or improbable use or application by appellee of such structures or appliances for a purpose for which they were neither designed, used or adapted.

It is not contended, nor is there any evidence which shows or from which it could be inferred, that the involved paint-spray booth was in any way of itself and when utilized for its proper purpose a dangerous instrumentality or agency, or that it was in any way or manner defective in its construction or parts. It was a light gauge metal top with glass sky-lights, and there is no evidence that this glass top was ever used, adapted, or employed for any purpose other than a glass covering through

which light could be apparently admitted. Nor does it appear from the evidence that the glass top, which was fifteen (15') feet high off the floor, was so constituted, constructed or exhibited as to be or become and allurement, invitation, or inducement for use as a walkway or support for any purpose. Under such circumstances and conditions, the legal conclusion seems irresistible that appellee's temporary utilization of the glass top, without making any examination or inspection thereof, as a supporting platform which he "found it necessary to step on . . . in order to move to a different position with respect to his work in removing the conveyor" was such an unusual, un-likely and improbable happening under the particular circumstances of this case, that appellant, in the exercise of the ordinary care of a prudent person, could not justifiably be held responsible for failing to foresee and anticipate such an occurrence and its consequences.

The governing rule is well expressed in the case of *Chicago, etc., R. Co.* v. *Dinius* (1908), 170 Ind. 222, 231, 84 N. E. 9, in this wise:

> "The rule well affirmed by the authorities is that under the law a person is required to anticipate or foresee and guard against what usually happens or is likely to happen, but this rule does not require him to anticipate or foresee and provide against that which is unusual and not likely to happen, or, in other words, that which is only remotely and slightly probable. The general test in such case is not whether the injurious result or consequence was possible, but whether it was probable, that is, likely to occur according to the usual experience of persons. A wrongdoer cannot be held responsible "for a consequence which is merely possible according to occasional experience, but only for a result or consequence which is probable according to the ordinary and usual ex-

perience of mankind." (Citing a substantial array of authorities.)

We think the rule as above stated in the Dinius case, *supra*, is peculiarly and significantly apropos and applicable to the evidentiary facts of this case.

Appellee, in his complaint, charged appellant with negligence in failing and neglecting to warn appellee of the dangerous and unsafe condition of the top of the spray booth. We find no evidence that the top of the spray booth was in any wise dangerous or unsafe when used and applied to the purpose for which it was intended and to which it had been adapted. The complaint also charges appellant with negligence in failing to cover the top of the paint-spray booth with a roof strong enough to bear the weight of a workman. This count of negligence implied, of course, that appellant should have built or provided the suggested roof just for the special occasion of appellee's work in removing the conveyor, since there is no evidence that the top of the booth was ever used or devoted as a platform for workmen or any other person at any other time or on any other occasion. This charge of negligence, as well as the two remaining counts alleging that appellant failed to provide and post suitable and sufficient warning signs or to otherwise notify appellee that the top of the spray booth was glass and would not support the weight of a workman, are, as they must be to be legally effective, predicated upon the theory that it was the duty of appellant to anticipate that appellee might step or stand upon the glass top in connection with his work of dismantling the conveyor.

We are not impressed that the particular facts and circumstances portrayed by the herein record evidence

cast such legal duty upon appellant. The appellant was not appellee's employer and, consequently, the former was under no legal duty to provide appellee with a "safe place" in which to do his work in the broad sense that the phrase is applied to an employer. As we have already pointed out, appellee was physically in appellant's building as an implied invitee, as the employee of Karl Conners of Machinery Transfer Company, for the sole purpose of carrying out his work for the latter in the removal of the conveyor system. Appellant's legal obligation, under such arrangement, was to use and exercise ordinary care that its premises were in a reasonably safe condition for such purpose. That duty did not require the appellant to furnish or provide appellee with ladders, scaffolding, supports, or platforms for his support of which he should utilize or stand upon in the doing of his work. There is no evidence in this record that appellant undertook to provide appellee with any such facilities. Rather, the undisputed evidence reflects that the conveyor was to be removed by the use of ladders and equipment furnished by the contractor, Karl Conners of Machinery Transfer Company, and that there was no occasion for the employees of the latter to be upon or use the top of the paint-spray booth while performing their work.

Under the particular arrangement and circumstances here apparent, to cast legal liability upon appellant for its failure to exceed its settled legal duty by anticipating all the various things, occurrences, and activities which could result in injury to the appellee, including the latter's use of the glass top of a paint-spray booth instead of the equipment supplied by his employer, would extend the rule of reasonableness to a degree of absurdity and futility.

Even in cases involving master and servant, it is held that the absolute obligation resting upon the master to use care to provide and maintain a "safe place" for his workman does not extend to mere transitory perils or to all the passing risks that may arise for short-lived causes. See *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 689, 80 N. E. 529, and cases cited.

As has been herein indicated, the appellant was not, in our opinion, under the circumstances demonstrated by the record evidence, required to anticipate or foresee that appellee might undertake to utilize the glass top of the paint-spray booth as a platform for his support while working for Karl Conners of Machinery Transfer Company in removing for it the conveyor system.

The evidence is without conflict that the top of the spray booth was some fifteen feet off the floor; that the conveyor was to be removed by the use of ladders and other equipment furnished by the contractor; that it was unnecessary for appellee to use the top of the spray booth for the purpose of his work; and that appellee had knowledge of the type of structure of the booth. But, notwithstanding, he made no examination or inspection of the top of the booth to ascertain the materials of which it was composed or whether it was sufficiently strong to bear his weight or safe for him to stand upon. With this knowledge and under the conditions and facilities provided by his employer for the doing of his work, ordinary care would require appellee to exercise vigilance for his own safety.

To the end that what we here say may be more readily appreciable, it seems proper to narrow the

factual circumstances so that the controlling legal principles may be applied with a more restful sense of seeming accuracy. The factors which we deem essential for this objective appear from the evidence to be in this wise: At the time appellee came upon and into appellant's premises as an implied invitee, the latter's manufacturing business had ceased and the equipment, appliances, implements, machinery, and facilities, including the paint-spray booth, formerly used and operated by appellant in carrying on its manufacturing work, had been sold to others and were in the process of being dismantled and removed by the various purchasers. There is no evidence that after such sale, the appellant retained or possessed any control, supervision, or direction as to how and when such dismantling and removal was to be done by the purchasers or the order or sequence in which the items so sold were to be removed. As an active participant in this dismantling and removal process, and the sole and only reason for his presence there, the appellee came upon and into appellant's building. These facts present a factual situation closely analagous to those involved in those cases in which the defendant's property was being repaired, rebuilt, remodeled, or in process of construction. See *Cole* v. *Willcutt & Sons Co.* (1914), 218 Mass. 71, pts. 2, 3, 105 N. E. 461; *Ambrose* v. *Allen* (1931), 113 Cal. App. 107, 298 P. 169, 171; *Kolburn* v. *P. J. Walker Co.* (1940), 38 Cal. App. 2d, 545, 101 P. 2d 747; *Irvine* v. *J. F. Shea Co.* (1940), 41 Cal. App. 458, pt. 3, 107 P. 2d 80, 81, 65 C. J. S., Negligence, §50, note 13, p. 545.

In general statement, the accepted rule is expressed that the duty to exercise care to keep the property in

a reasonably safe condition for invitees or business visitors thereon is coextensive with the invitation. 21 I. L. E., Negligence, §34, p. 291; 65 C. J. S., Negligence, §46, p. 535. The general statement just referred to encompasses the attending considerations that the duty of the inviter, and his corresponding liability for breach of duty, depends upon the circumstances surrounding the invitation, including the character of the premises the invitee is invited to use, the nature of the invitation, the conditions under which it is extended, and the use of the premises to be made by the invitee. 38 Am. Jur., Negligence, §96, p. 756. The basis of liability of the inviter for failing to render the premises reasonably safe for the invitee must be predicated upon the superior knowledge of the inviter of the dangers of the premises. 38 Am. Jur., Negligence, §185, p. 862.

The purpose and circumstances surrounding appellee's implied invitation to appellant's premises, as demonstrated by the evidence in this cause, have been heretofore remarked upon. As previously stated, the implied invitation carried with it no authorization or invitation by appellant for the use by appellee of the top of the paint-spray booth as a support or platform while doing his work. There is no evidence that the top of the booth had ever been adapted, used, or intended for use as such support or platform. There is no evidence that the paint-spray booth and the top thereof was in any way dangerous or unsafe when used for the purpose for which it was intended, nor that it contained any latent, concealed, or hidden defects or condition dangerous or perilous to appellee. There is no evidence that appellant had or should have had any knowledge or anticipation that appellee would use or intended to use and employ the top of

said booth for a purpose other than that for which it was intended. The evidence shows that the machinery, appliances, and other equipment located in appellant's building and formerly used by it in its manufacturing business, was being dismantled for removal and that the very purpose of appellee's presence in the building, was to dismantle a particular part of such equipment for his employer and that he was so engaged at the time he was injured. Therefore, such circumstances would warrant or afford the sole inference that appellee possessed knowledge of the then existing condition of the premises. It follows, we think, that having such knowledge, the appellee, as such implied invitee, must be held, as in the case of the premises in process of construction, to have entered upon the premises under his invitation for the use thereof and the equipment and structures therein for their ordinary purpose and functions.

We find in this record no evidence that appellant, under the established circumstances and its legal standard of duty arising therefrom, breached any duty owing to appellee. We are of the opinion, therefore, that the court failed to give recognition to appellant's standard of duty under the prevailing conditions, and that, consequently, it erred in refusing to grant appellant's motion for a directed verdict at the close of the evidence given in the cause, and in refusing to direct the jury to return a verdict for appellant.

Judgment reversed and cause remanded, with instructions to sustain appellant's motion for a new trial, and for further proceedings, in accord with the views expressed herein.

Carson, Ryan, JJ., concur; Faulconer, P. J., concurs in result.

NOTE.—Reported in 199 N. E. 2d 481.