Marjorie Cummings as Administratrix of the Estate of
Lloyd Cummings, Deceased and Janet Sue Cook as Administratrix of the Estate of James Arnold Cook, Deceased
*v.* Hoosier Marine Properties, Inc. and
Woodruff & Son, Inc.

[No. 3-1074A170. Filed June 23, 1977. Rehearing denied August 3, 1977.
Transfer denied January 12, 1978.]

*Clarence Borns, Thomas E. Dolatowski, Borns, Quinn, Kopko and Linquist,* of Merrillville, for appellants.

*James E. Schreiner, George E. Bloom, Travis, Tinkham and Schreiner,* of Hammond, for appellee.

HOFFMAN, J.—Marjorie Cummins, as Administratrix of the Estate of Lloyd Cummings, and Janet Sue Cook, as Administratrix of the Estate of James Arnold Cook, brought an action for the wrongful death of their respective husbands against Hoosier Marine Properties, Inc. (Hoosier Marine) and Woodruff and Sons, Inc. (Woodruff). After an entry of judgment on the evidence, Cummings and Cook perfected this appeal in an attempt to have the question of Hoosier Marine's alleged negligence determined by a jury notwithstanding its

defense that the decedents' employer was hired as an independent contractor.

The issues raised on appeal concern whether there was sufficient evidence for the jury to determine the negligence of Hoosier Marine on theories of its duty to:

a) control the excavation of sewer trenches pursuant to its contract to avoid the cave-in which resulted in the accident to the decedents;

b) maintain its property in a condition sufficient safe so as to avoid injury to a business invitee working in an unshored trench;

c) accepted vicarious liability for its effort to contract independently for the performance of inherently or intrinsically dangerous work;

d) accept vicarious liability for its failure to take due precaution to avoid harm when the act to be performed would probably cause injury;

e) accept vicarious liability for the doing by its independent contractor of an illegal act; and

f) accept vicarious liability for a duty imposed upon it by the terms of its contract.

The record reveals the following facts most favorable to appellants:

Hoosier Marine began the development of a subdivision on its land in Porter County, Indiana, in November of 1966. The project involved the construction of home sites and country club facilities which together would be known as the "Lakes of the Four Seasons." In the furtherance of its development Hoosier Marine retained the engineering services of Henry V. Steeg and Associates, Inc. (Steeg) to prepare plans and specifications and act as supervisors of the construction of a water and sewer system. Steeg prepared the plans and specifications and thereafter Hoosier Marine,

through its vice-president Werner Robert Heimann accepted bids for construction.

Pursuant to awarding the bids in 1968, Hoosier Marine entered into a contract for the completion of part of the water and sewer system with E. R. Knapp & Sons, Inc. (Knapp). Knapp's contract with Hoosier Marine incorporated by reference the plans and specifications prepared by Steeg.

Knapp thereafter entered into a subcontract with Woodruff for the digging of trenches and the installation of sewer tile, reserving for itself the completion of water mains. At no time did Hoosier Marine have a contract with Woodruff.

The contract between the parties contained provisions requiring that proper regard be given to the quality of materials and workmanship, the timeliness of completion and the implementation of safety precautions. In general terms the specifications provided that:

a) The water mains and sewer lines required for the project would be built under the supervision of Hoosier Marine's consulting engineer Steeg and Associates, Inc.;

b) All construction work was to comply with local ordinances, rules, regulations and statutes of the State of Indiana and all safety provisions of each of those laws applicable to building and construction would be observed;

c) The consulting engineering Steeg had the right to order safety precautions, and where the contractor had failed to conform to such measures, Steeg could put the work into such condition that it would in all respects be safe;

d) Sheeting and bracing were to be installed in order to firmly support the excavation and protect the surrounding land and structures;

e) The execution of each aspect of the work was required to conform with the engineer's specifications as to line, grade and quality; and

f) Work improperly performed or performed without proper regard to the requirements of the contract would allow the engineers to correct such deficiencies at the contractor's expense. Upon repeated failure to conform, Hoosier Marine had the right to terminate the contract.

In the spring of 1968 Woodruff began the sewer construction. Trenching and laying progressed through the summer until approximately five or six miles of sewer had been laid by August 23, 1968. During this time Woodruff used no sheeting or shorting to support the walls of the excavations nor was he called to task by either Hoosier Marine or Steeg for having failed to do so. On November 23, 1968, within a day of having completed the project, employees of Woodruff were working in a sewer trench approximately eighteen feet deep and five feet wide with sheer sides. Roland Phillips, one of the surviving employees of Woodruff, testified that he requested the backhoe operator to move some sand into the ditch "to bed the pipe." Apparently while the vehicle proceeded to procure the material Phillips saw the side of the trench move. He jumped as high as he could with his "arms up in the air" and "hollered at my buddy to run." However, the cave-in buried Phillips and the fellow employee over their heads.

Decedents Cummings and Cook were employed by Knapp in another area of the development constructing water mains. Upon hearing calls for help they brought shovels and with others began digging the victims from the trench. While working at this task a remaining portion of the bank caved in covering the rescuers as well as the original victims. Some of the victims were recovered safely but Cummings and Cook, the rescuing employees from Knapp, were fatally crushed.

Hoosier Marine's vice-president Werner Heimann was not present when the cave-in occurred. He did not witness any of the circumstances surrounding the work site prior to the deaths and he was unaware of any relevant attributes regarding the safe condition of the trenches.

Thereafter appellants individually filed complaints against Hoosier Marine and Woodruff for the wrongful death of their husbands. The two causes of action were consolidated for trial and proceeded on allegations that Hoosier Marine and Woodruff were negligent in their construction of the trench which caved in on the decedents. The case was tried before a jury and at the close of plaintiffs' evidence and prior to the submission of evidence on behalf of the defendants, Hoosier Marine moved for a judgment on the evidence pursuant to Ind. Rules of Procedure, Trial Rule 50. The trial court granted the motion and entered a directed verdict against Cummings and Cook. Upon the subsequent overruling of their motion to correct errors this appeal was perfected against Hoosier Marine.

The issue raised by appellants concerns whether the trial court erred in rendering its judgment on the evidence when it is submitted, as here, that there was sufficient evidence presented to create an issue of fact as to whether Hoosier Marine owed a duty to the decedents, whether it was negligent in its duty and whether decedents' deaths were proximately caused by such negligence.

Trial Rule 50, *supra,* provides, in pertinent part:

"(A) Judgment on the evidence—How raised—Effect. Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict."

The amount of evidence required of the plaintiff to avoid a judgment on the evidence has been determined by our Supreme Court in *Hendrix* v. *Harbelis* (1967), 248 Ind. 619, 230 N.E.2d 315, under the prior rule. At 623 of 248 Ind., at 318 of 230 N.E.2d, the court held:

> "It is only where there is a total absence of evidence or legitimate inferences in favor of plaintiff upon the issues, or where the evidence is without conflict and is susceptible of but one inference and that inference in favor of the defendant, that the court may give a peremptory instruction, as the defendant-appellant herein requested."

This standard was carried forward under the present Trial Rule 50, *supra, in Mamula* v. *Ford Motor Co.* (1971), at 182 of 150 Ind. App., at 851-52 of 275 N.E.2d (transfer denied), where it is stated:

> "The rule is often stated to be that in a jury trial a court should not direct a verdict for a defendant at the close of a plaintiff's evidence unless there is a total absence of evidence or reasonable inference on at least one essential element of a plaintiff's case. (Citations omitted.)
>
> "When passing on a motion for a directed verdict, the court is merely called on to determine if there is *some* evidence of negligence on the part of the defendant which the jury is entitled to consider. *Jones* v. *Furlong* (1951), 121 Ind. App. 279, 97 N.E.2d 369. *Where the evidence is such that the minds of reasonable men might differ,* or if the determination of negligence depends on conflicting evidence, then the question is for the jury."

Since the grant of a motion for a directed verdict deprives the plaintiffs of a determination of the facts by a jury it should not be lightly granted for the sake of mere judicial economy. However it should be noted that unlike a motion for summary judgment, when the court must search to find whether there is any material fact in issue from the pleadings and affidavits, a motion for directed verdict only arises after the court has had the opportunity to hear and evaluate all the evidence in the plaintiff's case. Accordingly, the question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there

is evidence upon which the jury could properly find a verdict for that party. *See,* 9 Wright & Miller, Federal Practice and Procedure: Civil § 2524, at 543 (1971).

In this context appellants argue that Hoosier Marine is directly liable for the deaths of the victims of the trench cave-in and that it cannot avail itself of an owner immunity based on the purported independent contractor status of Knapp. Moreover even were Knapp considered as an independent contractor *vis-a-vis* Hoosier Marine, it is argued that its actions were such as to come within the exception to the general rule absolving owners from the tortious acts of their independent contractors.

Appellants contend that there was sufficient evidence presented to show that Hoosier Marine controlled the manner and means of the construction of the sewer project such as would require them to be held liable for the improper execution of the work. The control allegedly retained by Hoosier Marine is said to be embodied in the specifications for construction prepared by Steeg which required the shoring and bracing of the trench excavations as safety precautions. Such are urged as evidence of knowledge that a dangerous condition existed which Hoosier Marine had a duty to alleviate.

Through this theory appellants urge that Hoosier Marine's control created a duty irrespective of any characterization involving respondeat superior and that it cannot avail itself of the insular aspects of an owner employing an independent contractor. Furthermore, appellants rely on *Gibbs et al.* v. *Miller et ux.* (1972), 152 Ind. App. 326, 283 N.E.2d 592 (transfer denied), for the proposition that the mere right to control is sufficient and that the actual exercise of control over the work is not required to be found for purposes of imposing liability.

Appellee Hoosier Marine responds that its relationship with both Knapp and Steeg was that of an owner and independent contractor and that it had no legal relationship

with Woodruff. Moreover were such a control or supervision to be found as urged by Cummings and Cook, an employer-employee respondeat superior condition would obtain precluding any recovery outside that available under workmen's compensation.

Appellants' attempt to require liability from their characterization of Hoosier Marine's control must fail. The allegation that Hoosier Marine maintained supervision over a construction project through Steeg's specifications requiring the shoring of trenches cannot be supported under the law even with a favorable view of the evidence presented. No showing has been made that Hoosier Marine had the requisite supervision of an employer or that it had a knowledge or should have had a knowledge that a dangerous condition existed.

If control is said to be operative when the right of some supervision is retained, it must be more than a general right which is usually reserved to all those who employ the labors of another. *See,* 2 Restatement of Torts 2d, § 414, at 387, Comments (1965). The control must be such as would enable the landowner to oversee the method of work employed. It must be a control which would under the common-law have given rise to the doctrine of respondeat superior.

In this regard appellants' attempt to draw support from *Gibbs et al.* v. *Miller et ux., supra,* is misplaced. *Gibbs* is premised on the agency principle that a master is only liable for the negligence of his servant when he is acting within the scope of his employment. Such liability is vicariously imposed on the theory that through an ability to control, the employer will be able to exercise some precautionary impetus to his employee's work habits and thereby induce accident avoidance. Accordingly the *Gibbs* court enumerated certain indicia of control on which a master-servant relationship could be based. These included the right to discharge, the mode of payment, the supplying

of tools and supplies, the belief by the parties in the existence of the master-servant relationship, control over the means used and the result reached, the length of employment and the establishment of work boundaries. *Gibbs et al.* v. *Miller, et ux., supra,* citing *Lazarus* v. *Scherer* (1931), 92 Ind. App. 90, 174 N.E. 293.

Thus if an owner gives directions for the work, furnishes equipment for it, or retains control over any part of it, he is required to exercise reasonable care for the protection of others. But the right to control one's subcontractor must have sufficient practical effect that an imposition of vicarious liability will encourage a form of supervision which will promote accident prevention. Absent the prophylactic purposes supporting liability under respondeat superior, the attachment of liability under the rubric of control becomes solely remedial and compensatory; a result in this case which would be confined to workmen's compensation.

Appellants have presented no evidence to suggest that Werner Heimann exercised any supervision over the construction. The evidence most favorable to appellants disclose that he knew little or nothing about the construction business and that his real work consisted of contracting with others to design and carry out projects for him. His on-site office concerned itself with clerical work and his primary activities involved the direction of these people.

Under such circumstances where there is a total absence of supervision or control, the law does not impose a duty which relies on foreseeability as its essential feature. Accordingly Hoosier Marine is not liable under appellants' theory of control. *Prest-O-Lite Co.* v. *Skeel* (1914), 182 Ind. 593, 106 N.E. 365; *Marion Shoe Co.* v. *Eppley* (1914), 181 Ind. 219, 104 N.E. 65; *Hale* v. *Peabody Coal Company* (1976), 168 Ind. App. 336, 343 N.E.2d 316; *Jones, Admx.* v. *IPALCO et al.* (1973), 158 Ind. App. 676, 304 N.E.

2d 337 (transfer denied) ; *Stewart* v. *Huff* (1938), 105 Ind. App. 447, 14 N.E.2d 322.

Appellants relying on *Parr* v. *McDade* (1974), 161 Ind. App. 106, 314 N.E.2d 768, would have this court impose liability on Hoosier Marine in any event because of its failure to maintain its property in a condition sufficiently safe so as to avoid injury to a business invitee working in an unshored trench. *Parr* involved injuries to an upstair tenant arising from a fire caused by an open gas heater used by the resident manager of the landlord. The court held that since the apartment building owners knowingly allowed their employee, occupying an apartment as an employee and not as a tenant, to use a dangerous open flame heater and failed to warn the plaintiff-tenant occupying an adjacent apartment, or take steps to correct the danger, the owners as landlords were negligent with respect to their duty to the tenant in their use of the employee's apartment. The decision in *Parr* rested on two theories. First, if an owner occupies a portion of the premises himself through an agent he is not permitted to use such in a manner which is likely to injure his tenant. *See, Indianapolis Abattoir Co.* v. *Temperly* (1902), 159 Ind. 651, 64 N.E. 906. Second, the owner was negligent in his failure to "remedy" a dangerous situation of which he had notice and over which he had control by reason of the employer-employee relationship. *See,* 2 Restatement of Torts 2d, § 317, at 125 (1965).

From *Parr* appellants urge that the landlord's liability was not based on respondeat superior but rather predicated on a duty to control his servant while acting beyond the scope of employment because of the owner's superior knowledge of the danger and his control over the premises.

Given this argument in the factual context of the case at bar, consideration should be given to *Hoosier Cardinal Corp.*

v. *Brizius* (1964), 136 Ind. App. 363, 199 N.E.2d 481 (transfer denied). In *Hoosier Cardinal* the court at 376-77 of 136 Ind. App., at 487-88 of 199 N.E.2d, stated:

"In general statement, the accepted rule is expressed that the duty to exercise care to keep the property in a reasonably safe condition for invitees or business visitors thereon is coextensive with the invitation. 21 I.L.E., Negligence, § 34, p. 291; 65 C.J.S., Negligence, § 46, p. 535. The general statement just referred to encompasses the attending considerations that the duty of the inviter, and his corresponding liability for breach of duty, depends upon the circumstances surrounding the invitation, including the character of the premises the invitee is invited to use, the nature of the invitation, the conditions under which it is extended, and the use of the premises to be made by the invitee. 38 Am. Jur., Negligence, § 96, p. 756. The basis of liability of the inviter for failing to render the premises reasonably safe for the invitee must be predicated upon the superior knowledge of the inviter of the dangers of the premises. 38 Am. Jur., Negligence, § 185, p. 862."

In the case at bar no such superior knowledge has been shown to have existed in Hoosier Marine. Werner Heimann never inspected the sewer trenches nor any other work activity. He was unaware that a potential danger existed as a result of how Woodruff was digging the excavations.

Moreover the inclusion of safety precautions as part of the engineering specifications for the project would not alone constitute notice of a particularly dangerous condition on the property. *Jones, Admx.* v. *IPALCO et al., supra.* In no respect do we question the validity of these safety requirements in the contract. However we do not believe it consistent with sound public policy to permit Cummings and Cook to employ them to impose liability. Further, contrary to appellants' argument, Hoosier Marine's duty to provide a safe working habitat did not extend to Woodruff's manner of digging trenches. Appellee's only legal obligation was to exercise ordinary care that its premises were in a reasonably safe condition for work purposes. *Hoosier Cardinal Corp.* v. *Brizius, supra.* Steeg's

specifications gave rise to no specific duty on the part of Hoosier Marine. *Jones, Admx.* v. *IPALCO et al., supra.* We therefore conclude that Hoosier Marine's property was sufficiently safe insofar as it had a duty to so maintain it for those working on the construction project.

From the foregoing, we conclude that Hoosier Marine's relationship with Knapp was not one of respondeat superior but was that of an owner toward an independent contractor and that Woodruff as a subcontractor of Knapp's had, at most, the same status. Knapp exercised an independent employment under a contract to do a certain work reserving to himself control over the manner in which the work was to be performed. *See, Marion Shoe Co.* v. *Eppley, supra* (1914), 181 Ind. 219, 104 N.E. 65; *City of Gary* v. *Bontrager Const. Co.* (1943), 113 Ind. App. 151, 47 N.E.2d 182. The fact that work was done to the satisfaction of Steeg representing Hoosier Marine did not render Knapp or Woodruff servants. Furthermore, the status between the parties was to be determined by the contract as a whole and the continuous supervision by Steeg for quality did not alter the contractor's separate nature. *Prest-O-Lite Co.* v. *Skeel, supra* (1914), 182 Ind. 593, 106 N.E. 365. Thus, Hoosier Marine's theory of nonliability is founded on the principle that one should not be compelled to answer for the fault or neglect of another over whom he has no control and that in this case it, as owner, had a right to rely on a presumption that the contractor would discharge the legal duties owing to his employees and third persons. *Bauer* v. *Plumbers' Sup. Corp. of Evansville* (1965), 137 Ind. App. 106, 205 N.E. 2d 567; *Van Drake* v. *Thomas* (1942), 110 Ind. App. 586, 38 N.E.2d 878; *Scott Constr. Co.* v. *Cobb* (1928), 86 Ind. App. 699, 159 N.E. 763.

However, the rule that an employer is not liable for the negligence of an independent contractor whom he employs

is often recited primarily as a preamble to the catalog of its exceptions. *Jones, Admx.* v. *IPALCO et al.; supra; Hale* v. *Peabody Coal Company, supra; Lamb* v. *South Unit Jehovah's Witnesses* (1950), 232 Minn. 259, 45 N.W.2d 403; Annot., 33 A.L.R.2d 47 (1954).

In this context Cummings and Cook urge as their next contention that even if Knapp and Woodruff were independent contractors sufficient evidence was presented to allow a jury to find Hoosier Marine liable under exceptions to the general rule. These exceptions were originally enumerated in *Scott Constr. Co.* v. *Cobb, supra,* at 703 of 86 Ind. App., at 765 of 159 N.E.:

"[T]here are many exceptions to this rule. It does not apply in the following cases: (1) Where the contract requires the performance of work intrinsically dangerous; (2) where a party is by law or contract charged with a specific duty; (3) where the act will create a nuisance; (4) where the act to be performed will probably cause injury to others unless due precaution is taken to avoid harm; and (5) where the act to be performed is illegal." *See also, Stewart* v. *Huff, supra* (1938), 105 Ind. App. 447, 14 N.E. 2d 322.

In his work on torts, Prosser states that these exceptions which rest on a theory of vicarious liability for non-delegable duties go further and hold the employer liable for the negligence of the contractor although he has himself done everything that could reasonably be required of him. The criterion by which the non-delegable character of such duties may be determined is that the responsibility is so important to the community that the employer should not be permitted to transfer it to another. Prosser, Torts, § 71, at 470 (4th Ed. 1971). The result is often that any duty which can be found to rest upon the employer himself cannot be delegated to an independent contractor. *See, Bituminous Casualty Corporation* v. *Hedinger* (7 Cir., 1969), 407 F.2d 655.

Relying on the first exception to the general rule or non-delegable duty Cummings and Cook argue that the trenching

was an inherently or intrinsically dangerous activity by drawing support from 2 Restatement of Torts 2d, § 427, at 415 (1965). Such section states:

"§ 427.  Negligence as to Danger Inherent in the Work. One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

However inherently dangerous means that the danger exists in the doing of the activity regardless of the method used. It is a risk intrinsic to the accomplishment of the task and not simply a danger arising from a casual or collateral negligence of others. *Neal, Admr.* v. *Home Builders, Inc.* (1953), 232 Ind. 160, 111 N.E.2d 280. Thus liability under the inherently dangerous exception is imposed on a rationale sounding in strict liability as would exist for example in blasting.

In this context the mere excavation of sewer trenches cannot be considered intrinsically dangerous. Properly done the work is relatively safe.

In *Stewart* v. *Huff, supra,* at 455 of 105 Ind. App., at 322 of 14 N.E.2d, this court quoted from *Hyman* v. *Barrett* (1918), 224 N.Y. 436, at 437, 121 N.E. 271, at 272, as follows:

"The danger was not inherent in the work contracted to be done . . . . The governing principle is not doubtful. The only difficulty is in applying it to varying conditions. Here the decisive facts are simple. The defendant had no notice of the danger. He had not authorized any work which might reasonably be expected to create the danger. We think he is not liable for the act of a contractor's servant."

The risk herein developed only because of the departure from the contemplated method used by the subcontractor Woodruff. Accordingly the negligent failure to shore and brace was collateral to the risk created by digging the trenches,

thus precluding liability to Hoosier Marine. *See, Hale* v. *Peabody Coal Company, supra.*

However appellants further argue in their next contention of error that the digging of the sewer trenches would probably cause injury to others unless due precaution were taken to avoid such injury. Appellants' reliance on this exception to the general rule expands the allegation that the project was intrinsically dangerous to an allegation that the work involved specific risks that were readily foreseeable. Prosser distinguishes this exception from the one involving intrinsic danger on grounds that it is "limited to work in which there is a high degree of risk in relation to the particular surroundings or some rather specific risk *** to those in the vicinity, recognizable in advance as calling for definite precautions. The emphasis is upon the 'peculiar' character of the risk, and the need for special * care." (Footnote omitted.) Prosser, Torts, § 71, at 473 (4th Ed. 1971).

Within these confines an action would fail absent a showing by the plaintiff that in view of the nature of the work and the conditions under which it was to be executed, the defendant should have foreseen that the actual catastrophe which occurred was likely to happen if those precautionary measures were omitted. *Jones, Admx.* v. *IPALCO et al., supra; Denneau* v. *Ind. & Mich. Elect. Co.* (1971), 150 Ind. App. 615, 277 N.E.2d 8 (transfer denied).

In the case at bar the record reveals no evidence showing that Hoosier Marine had any knowledge of a potentially unsafe or dangerous condition at the time the sewer trenches were contracted for. Moreover, Werner Heimann never inspected the progress of the work nor did he have any acquaintance with the appropriate construction techniques involved. Nevertheless appellants assert that the contract provisions themselves specifying trenches of over 18 feet in depth coupled with requirements of shoring and bracing show that Hoosier Marine was aware and, in fact, could

foresee the danger upon or failure to take reasonable precautions.

However, the safety precautions specified by Steeg for Knapp are not evidence of Hoosier Marine's knowledge concerning a specifically foreseeable risk arising out of trench excavations. Rather these requirements were properly anticipated as having been carried out in a manner which would reduce any risk beyond that which would logically be considered as foreseeable. The specifications by Steeg contemplate the performance of the work in a manner which would avoid all risks. Unless it further appears from the evidence that Hoosier Marine owed a duty to appellants to inspect and test the shoring and bracing and to direct the manner of excavation, no liability could attach. *Mackey* v. *Lafayette, etc., Trust Co.* (1919), 70 Ind. App. 59, 121 N.E. 682.

The owner is held liable only for those injuries resulting directly from the nature of the work which might have been within the contemplation of the parties and no recovery is allowed for an injury resulting from the wrongful act entirely of the independent contractor's doing. *Naylor* v. *Holland, etc., Sugar Co.* (1921), 75 Ind. App. 132, 130 N.E. 152. *See, Bedford Stone, etc., Co.* v. *Hennigar* (1918), 187 Ind. 716, 121 N.E. 277. 41 Am. Jur.2d, *Independent Contractors*, § 42, at 808 (1968).

Cummings and Cook next contend as an exception that Hoosier Marine allowed the contractor to continue work in such a manner that it violated State and local laws and therefore that it contracted for the doing of an illegal act. Appellants pursue this exception to the general rule on two theories: First, they assert that the administrative regulations assembled under "Construction Industry Safety Code", Burns Administrative Rules and Regulations, §§ 40-2139-L1, *et seq.*, requiring the shoring and bracing of trenches over six feet were violated. Second, they contend that the bid price for the project was so low relative to those costs which should

have been anticipated by Hoosier Marine that the acceptance thereof gave rise to a conclusive presumption that the contractor could not have been expected to shore and brace the trenches.

These assertions are untenable under the circumstances of the case at bar. Burns Administrative Rules and Regulations, §§ 40-2139-L6, L7 and L8, *supra,* impose no duty on Hoosier Marine. These regulations specifically impose a duty on those who are prime contractors. In pertinent part they provide that:

"(6)   The prime contractor of a project shall be deemed as being responsible for compliance with the provisions of this code. In the event there is more than one [1] prime contractor on a project, each shall be responsible for compliance of this code within the area of his jurisdiction.

"(7)   In the event the prime contractor sublets all or parts of the prime contract, the subcontractors shall be jointly responsible with the prime contractor for compliance with this code, within the area of the subcontractor's jurisdiction.

"(8)   The term 'prime contractor' shall be interpreted as being the person, firm or corporation that is responsible to the awarding unit for direct or indirect completion of all or part of the overall project."

As stated in *Jones, Admx.* v. *IPALCO et al., supra,* at 689 of 158 Ind. App., at 345 of 304 N.E.2d:

"This definition of prime contractor merely recognizes the existence of a legal relationship comprised of *two distinct* entities:   (1) the Contractor, *i.e.,* one who undertakes to perform certain work *for another,* and (2) the Contractee, *i.e.,* the 'awarding unit' or person for whom such work is performed. *See,* 9 *Words and Phrases* 576 *et seq.,* and cases thereunder.

"Ipalco's exclusive place in this relationship was that of 'Contractee,' not 'Contractor.' No duty was placed upon it by operation of a regulation which was addressed to prime 'Contractors.' "

In addition it should be noted that Hoosier Marine did in fact specify through its engineer that the shoring and bracing would be required for completion of the project. An owner

is justified in assuming that such specifications would be followed.

It is also clear that an owner is under no duty to discern whether the bid price for the contract will enable the bidder to obtain a favorable cash flow. A presumption, if any there be, is that a contractor upon submitting a bid will be ready and able to perform the contract.

Moreover, this exception allowing liability requires the knowledge and sanctioning of the illegal act at the time of contracting by the owner. Appellants rely on *The Wabash, St. Louis and Pacific Railway Company* v. *Farver* (1887), 111 Ind. 195, 12 N.E. 296 and *Brennan* v. *George L. Walker Co.* (1915), 93 Misc. 57, 156 N.Y.S. 314, for the proposition that when the owner does not require his contractor to comply with the law and the contractor's violation of that law is the proximate cause of the injuries sustained then the owner is also liable for those injured. However, both *Wabash* and *Brennan* are premised upon the owner's participation in the illegal conduct either through the contract or by knowingly permitting the doing of an illegal act. Having presented no evidence that Hoosier Marine was so involved, appellants cannot be afforded this exception to the general rule. *B.A. Kipp Co.* v. *Waldon* (1947), 117 Ind. App. 694, 75 N.E.2d 675.

Appellants' final contention is that they submitted sufficient evidence that the contract between Hoosier Marine and Knapp imposed a specific duty on Hoosier Marine for which it is liable under an exception to the general rule of nonliability for independent contractors. Cummings and Cook maintain that Steeg as an agent of Hoosier Marine was specifically invested with the duty to enforce all contract provisions including those regarding safety precautions.

This court in *Jones, Admx.* v. *IPALCO et al.,* *supra,* held that an owner's specifications requiring safety precautions

do not give rise to a duty to exercise that right. The fact that the specifications require a contractor to take safety precautions does not impose a specific duty on the part of the owner to enforce the same. Moreover, an exception to the general rule of nonliability to employees of independent contractors may not be read as involving a contractee in the manner and means of the independent contractor's performance by obliging the contractee to examine the contractor's work to make certain that all precautions have been taken to prevent probable harm to servants. *Hale v. Peabody Coal Company, supra.* Without a specific duty to inspect, contract specifications requiring the observance of safety precautions impose a duty only on the independent contractor and not the owner.

It should be borne in mind through this analysis of exceptions that the general rule in Indiana is that an owner is not liable for the torts of one he hires to perform his construction as an independent contractor. *Prest-O-Lite Co.* v. *Skeel, supra* (1914), 182 Ind. 593, 106 N.E. 365; *Marion Shoe Co.* v. *Eppley, supra* (1914), 181 Ind. 219, 104 N.E. 65; *The City of Logansport* v. *Dick, Administratrix, et al.* (1880), 70 Ind. 65, 36 Am. Rep. 166; *Hale* v. *Peabody Coal Company, supra* (1976), 168 Ind. App. 336, 343 N.E.2d 316; *Jones, Admx.* v. *IPALCO et al., supra* (1973), 158 Ind. App. 676, 304 N.E.2d 337 (transfer denied); *Stewart* v. *Huff, supra* (1938), 105 Ind. App. 447, 14 N.E.2d 322; *Scott Constr. Co.* v. *Cobb, supra* (1928), 86 Ind. App. 699, 159 N.E. 763. It is not within our province to attempt to change this rule absent a showing that the owner or contractor could have avoided or prevented the loss by taking foreseeable precautions. Absent one of the exceptions to the general rule there is no policy reason for shifting or distributing the loss in a different manner than that already available to the parties. *See*, Annot., 33 A.L.R.2d 13 (1950).

In the case at bar there was evidence that Hoosier Marine through Werner Heimann contracted with various construction companies to build a subdivision. During the work on one phase of this project several employees of these construction contractors were fatally injured. There is an absence of anything but tangential evidence connecting Hoosier Marine with these tragedies. Accordingly without appropriate evidence from which a jury could have found a verdict for appellants the judgment of the trial court pursuant to Ind. Rules of Procedure, Trial Rule 50, must be affirmed.

Judgment affirmed.

Staton, P.J. and Garrard, J., concur.

NOTE.—Reported at 363 N.E.2d 1266.