**Edward OOMS, Appellant–Plaintiff,**

v.

**USX CORPORATION, Appellee–Defendant.**

No. 45A03–9506–CV–180.

Court of Appeals of Indiana.

Feb. 28, 1996.

Transfer Denied July 8, 1996.

---

Michael S. Baechle, Michael S. Baechle, P.C., Merrillville, for appellant.

Robert J. Feldt, Eichhorn, Eichhorn & Link, Hammond, for appellee.

## OPINION

GARRARD, Judge.

Edward Ooms appeals the entry of summary judgment in favor of USX (formerly United States Steel Corporation) on his claim for damages resulting from a slip and fall injury on USX's premises.

### FACTS

USX owns a steel mill in Gary, Indiana, where it maintains a bulk oil storage facility. This facility receives and stores large quantities of fuel oil. The oil is delivered to the facility by tank truck. On August 19, 1992, Ooms was employed by a trucking company hired to deliver bulk oil to USX.

Upon arriving at the facility, Ooms drove his truck to one of the six "bays" used for unloading and proceeded to hook up the tanker in order to unload the oil. Where Ooms parked his truck, the ground was sloped and full of ruts. Oil spills were fairly common, and the bay where Ooms parked had oil on the ground "everywhere." The drivers were provided with Oil–Dri, an absorbent, and were instructed to throw it on the ground if they spilled oil. During the unloading process, the drivers were required to watch their vehicles to be certain that hoses did not break and leak oil. The drivers were permitted to stand on a nearby hill in order to observe the vehicles and to avoid standing in the oil. During the unloading process, Ooms had gone to stand on the hill, as it was the only place he could go to avoid standing in oil. While stepping back down the hill, Ooms slipped at the bottom and fell.

USX was responsible for keeping the bays free of hazardous conditions. From time to time, depending on how "nasty" the conditions were, USX would remove the contaminated soil and recycle the oil. John Jansen, the USX employee responsible for managing the facility, and his supervisor would inspect the bay area periodically for hazardous con-

ditions. The drivers had complained many times about the conditions of the bay areas, both to Jansen and to the employees of A & B Consulting, the firm hired to run the facility. However, Ooms' employer told him that if he refused to deliver oil he would be fired. The morning after Ooms was injured, USX leveled the hill area, in part because it was considered a "tripping hazard."

Ooms filed a complaint for damages, after which USX filed for summary judgment. The trial court granted this motion, and Ooms appeals.

## DISCUSSION

While Ooms presents his argument as five issues, we simply address his contentions as whether the trial court erred in granting summary judgment. We find that the trial court did err and therefore reverse.

Summary judgment is appropriate only when the evidentiary matter designated to the trial court shows that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Briggs v. Finley,* 631 N.E.2d 959 (Ind.Ct.App.1994), *trans. denied.* The burden is on the moving party to prove that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Landau v. Bailey,* 629 N.E.2d 264, 266 (Ind.Ct.App.1994), *reh'g denied.* Once the moving party meets its burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *Watters v. Dinn,* 633 N.E.2d 280, 285 (Ind.Ct.App.1994), *trans. denied.* On appeal, we are bound by the same standard as the trial court and we must consider all matters which were designated at the summary judgment stage in the light most favorable to the nonmoving party. *Schooley v. Ingersoll Rand, Inc.,* 631 N.E.2d 932, 936 (Ind.Ct.App.1994). Where material facts conflict or undisputed facts lead to conflicting inferences, summary judgment is inappropriate. *Dague v. Fort Wayne Newspapers, Inc.,* 647 N.E.2d 1138, 1140 (Ind.Ct. App.1995), *trans. denied.*

▮ The parties do not dispute the well-settled law on property owner liability for injury to independent contractors. Generally, the owner of property is under no duty to provide an independent contractor with a safe place to work, but there is a duty to keep the property in a reasonably safe condition. *Woods v. Qual–Craft Industries, Inc.,* 648 N.E.2d 1198, 1201 (Ind.Ct.App.1995), *trans. denied; McClure v. Strother,* 570 N.E.2d 1319, 1321 (Ind.Ct.App.1991). This arises from the fact that an employee of an independent contractor is a business invitee, and a landowner has a common law duty to exercise due care to keep the property in a reasonably safe condition for business invitees. *Woods,* 648 N.E.2d at 1200–01.

▮ However, USX argued, and the trial court apparently agreed, that Ooms had accepted a "restricted invitation" to enter its premises, and, under this limited duty, there was no evidence of any breach. USX cites the following language from *Hoosier Cardinal Corporation v. Brizius,* 136 Ind.App. 363, 199 N.E.2d 481 (1964) to support its proposition:

> In general statement, the accepted rule is expressed that the duty to exercise care to keep the property in a reasonably safe condition for invitees or business visitors thereon is coextensive with the invitation. 21 I.L.E. Negligence, § 34, p. 291; 65 C.J.S. Negligence § 46, p. 535. The general statement just referred to encompasses the attending considerations that the duty of the inviter, and his corresponding liability for breach of duty, depends upon the circumstances surrounding the invitation, including the character of the premises the invitee is invited to use, the nature of the invitation, the conditions under which it is extended, and the use of the premises to be made by the invitee. 38 AmJur., Negligence, § 96, p. 756.

*Id.,* 199 N.E.2d at 487. We do not disagree with this language. However, we do disagree with USX's assertion that the designated evidence shows that Ooms expressly agreed to a limited invitation to enter its premises.

USX contends that Ooms' "right of entry onto USX's industrial facility was contingent

upon his acceptance of the responsibility for dealing with any alleged oil spills as a part of his job duties and his acceptance of the fact that USX would not prevent oil spillage or clean up oil spillage for his benefit." (Brief of Appellee at 9). However, the designated evidence merely shows that Ooms understood that the drivers were to use Oil–Dri on any oil that they spilled, and that he was aware of the oily conditions on the premises. Simply being aware of a condition does not translate into accepting a restricted invitation or limited duty.[1] In fact, the designated evidence shows that USX admitted it had a duty to keep the bay area free of hazardous conditions. USX removed the contaminated soil as needed, depending on how "nasty" the conditions became. Jansen and his supervisor periodically checked the bay area for hazardous conditions. The issue before us then is not whether Ooms agreed to limit the duty owed to him by accepting a "restricted invitation" to enter the premises. USX, as the owner of the storage facility, owed Ooms a duty to keep the property in a reasonably safe condition. Rather, we must determine whether the designated evidence establishes, as a matter of law, that USX fulfilled this duty.

The duty of care a possessor of land owes to an invitee is well-established:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (1965); *Douglass v. Irvin*, 549 N.E.2d 368, 370 (Ind.

1990). This section should be read in conjunction with § 343A:

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.*

Restatement (Second) of Torts § 343A(1) (emphasis added); *Douglass*, 549 N.E.2d at 370.

▉ Our supreme court in *Douglass* explained how the comparative knowledge of the landowner and invitee is to be considered:

While the comparative knowledge of landowner and invitee is not a factor in assessing whether the duty exists, it is properly taken into consideration in determining whether such a duty was breached. Separate evidence of disparate knowledge is not required to prove the existence of duty. However, facts showing only that a landowner knows of a condition involving a risk of harm to an invitee, but could reasonably expect the invitee to discover, realize, and avoid such risk, may be insufficient to prove breach of the duty.

... [F]actual circumstances may exist in which a court may find that a landowner's failure to take precautions or to warn may constitute a breach of duty because it was reasonably foreseeable that the invitee could suffer harm despite knowledge or obviousness of the risk, and at the same time find that an invitee had actual knowledge and appreciation of the specific risks involved and voluntarily accepted that risk, thus establishing the defense of incurred risk.

*Id.* at 370.

Before turning to the facts of this case, we also find it instructive to note the comments to the Restatement (Second) of Torts § 343A:

duty exists. *Douglass v. Irvin*, 549 N.E.2d 368, 370 (Ind.1990).

---

1. The knowledge of an invitee regarding the conditions on the premises goes to the determination of whether a duty was breached, not whether a

(e) In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so. Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them.

. . . .

(f) *There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger.* In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

*. . . Such reason may . . . arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the in-*

*vitee is to be charged with contributory negligence, or assumption of risk. It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances.*

Illustrations:

. . . .

5. A owns an office building, in which he rents an office for business purposes to B. The only approach to the office is over a slippery waxed stairway, whose condition is visible and quite obvious. C, employed by B in the office, uses the stairway on her way to work, slips on it, and is injured. Her only alternative to taking the risk was to forgo her employment. A is subject to liability to C.

Restatement (Second) of Torts § 343A, cmt. e & f, illus. 5.[2]

Upon examination of the evidence designated to the trial court, we find conflicting inferences which render the entry of summary judgment erroneous. The authorities cited above establish that there are situations where a landowner should anticipate that an invitee will be harmed by a dangerous condition despite the known or obvious nature of the condition. Although Ooms was aware of the oily conditions, he stated that the oil was everywhere and that there was no safe place to stand. The only place where he could escape the oil and still be able to monitor his truck, as USX required him to do, was on the hill. USX permitted the drivers to stand on the hill. Thus, Ooms did not take any actions which were unforeseeable or unauthorized by USX. *Cf. Douglass,* 549 N.E.2d at 368 (where homeowner provided neighbor with kitchen door key, owner could not reasonably anticipate that neighbor would forget key, enter house through patio door in the dark, slip and fall). It was while coming back down the hill, acknowledged by Jansen

---

**2.** This viewpoint was echoed in *Broadhurst v. Davis,* 146 Ind.App. 329, 255 N.E.2d 544, 546 (1970), quoting Prosser on Torts (3rd Ed.), § 61, p. 402 ("In any case where the occupier, as a reasonable man, should anticipate an unreason-able risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required.")

to be considered a tripping hazard, that Ooms fell. Construing the facts in a light most favorable to Ooms, the evidence supports a reasonable inference that USX should have anticipated that Ooms would not be able to avoid the hazardous condition of the oily ground and the hill, despite Ooms' knowledge and awareness of the condition.

■ While we may affirm a summary judgment based upon any theory supported by the record, we also cannot say that Ooms incurred the risk of his injuries as a matter of law. It is not enough that a plaintiff have merely a general awareness of a potential for mishap, but, rather, the defense demands a subjective analysis focusing on the plaintiff's actual knowledge and appreciation of the specific risk involved and the voluntary acceptance of that risk. *Clark v. Wiegand,* 617 N.E.2d 916, 918 (Ind.1993); *Get–N–Go v. Markins,* 544 N.E.2d 484, 486 (Ind.1989). Here, USX has not designated any evidence showing that Ooms had actual knowledge and appreciation of the specific risk involved in slipping while descending the hill; rather, the evidence only shows that Ooms was aware of the generally oily conditions.

■ Further, we find conflicting inferences arise regarding the voluntary nature of Ooms' actions. Even when a danger is known and appreciated, continued exposure to it does not amount to incurring its risk where there is no reasonable opportunity to escape from it or where the exposure is the result of influence, circumstances or surroundings which are a real inducement to continue despite the danger. *Get–N–Go,* 544 N.E.2d at 487. In *Meadowlark Farms, Inc. v. Warken,* 176 Ind.App. 437, 376 N.E.2d 122 (1978), the court found sufficient evidence of inducing circumstances where the injured plaintiff was contractually obligated to deliver grain to the defendant and to use the defendant's machinery that ultimately proved unreasonably dangerous. *See also St. Mary's Byzantine Church v. Mantich,* 505 N.E.2d 811, 814 (Ind.Ct.App.1987), *trans. denied.* As noted by the court in *St. Mary's,* while there was an alternative to the conduct employed in *Meadowlark* which would have avoided the specific harm, that alternative would have breached the contract. In *St. Mary's,* the court found that strong religious faith and dedication to the church, while undoubtedly powerful personal inducements to continue using a ramp at the church the plaintiff knew was dangerous, "did not subject her to additional physical danger [or] to unacceptable legal consequences." *Id.* We find that Ooms statement that he had been told he would be fired if he refused to deliver oil to USX's facility is the type of "strong, external compelling circumstance" that a jury may reasonably conclude would render the acceptance of risk involuntary. *See id.;* see also Restatement (Second) of Torts § 343A, cmt. f, illus. 5 (where invitee's only alternative to taking the risk was to forego employment, owner could be subject to liability).

For the foregoing reasons, the entry of summary judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

STATON and RUCKER, JJ., concur.