John TATE, Appellant–Plaintiff,

v.

CAMBRIDGE COMMONS APARTMENTS OF INDIANAPOLIS, Limited Partnership, Appellee–Defendant.

No. 49A05–9811–CV–550.

Court of Appeals of Indiana.

May 27, 1999.

**526**

Kevin E. Deville, The Law office of Stanley Kahn, Indianapolis, Indiana, Attorney for Appellant.

Richard A. Cook, Skiles & Cook, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

BAKER, Judge

Appellant-plaintiff John Tate appeals from the trial court's grant of summary judgment in favor of appellee-defendant Cambridge Commons Apartments of Indianapolis (Cambridge Commons) on his complaint for negligence. Specifically, Tate argues that the enactment of the Comparative Fault Act[1] superseded the application of §§ 343 and 343A of the Restatement (Second) of Torts (1965). Alternatively, Tate argues that there is a material question of fact regarding whether Cambridge Commons breached the duty it owed to Tate as an invitee because Cambridge Commons should have expected that Tate would fail to protect himself against the known danger of an icy sidewalk.

### FACTS

The facts most favorable to Tate reveal that on February 16, 1994, following a large ice storm, Tate went to Cambridge Commons to deliver drywall. When Tate arrived, he noticed that the sidewalks were all clear with the exception of the sidewalk leading to the laundry room, which was covered with ice. Cambridge Commons' maintenance supervisor, Kevin Schmidt, was surprised to see Tate because Tate was scheduled to deliver the drywall a week earlier. Schmidt gave Tate a key to the laundry room. While Schmidt considered the ice to be dangerous that day, he did not personally salt the sidewalk, did not advise Tate of alternate routes, such as walking in the grass, and did not tell Tate to wait to do the job until conditions improved. After obtaining the key, Tate successfully carried one sheet of drywall over the slick, ice-covered sidewalk. Tate perceived the slickness of the sidewalk on his first trip. However, he proceeded to return to his truck and obtain another sheet of drywall. As he was walking on the sidewalk the second time, he slipped and fell. The

---

1. IND.CODE §§ 34–51–2–1, –19 (formerly IND.CODE §§ 34–4–33–1, –12).

drywall that he was carrying landed on his ankle and broke it.

Thereafter, on January 17, 1996, Tate filed a complaint against Cambridge Commons alleging negligence and claiming that Cambridge Commons owed a duty to Tate, a business invitee, to keep the common areas in a safe and reasonable condition by properly inspecting, salting, cleaning, clearing, repairing and maintaining the sidewalk. On August 21, 1996, Cambridge Commons filed a motion for summary judgment arguing that it did not breach any duty owed to Tate because it was not required to protect Tate, an invitee, from dangers of which he was fully aware, yet consciously disregarded. Following a hearing on August 24, 1998, the trial court granted Cambridge Commons' motion for summary judgment. Tate now appeals.

### DISCUSSION AND DECISION

#### I. Standard of Review

In reviewing a grant of summary judgment, we stand in the same position as the trial court. *Straley v. Kimberly,* 687 N.E.2d 360, 364 (Ind.Ct.App.1997), *trans. denied.* Summary judgment is only appropriate where the designated materials reveal that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* Although summary judgment is generally inappropriate in negligence cases, it may be appropriate if the defendant shows that the undisputed facts negate at least one element of the plaintiff's claim. *Id.* We consider the facts in the light most favorable to the non-moving party, resolving any doubt in their favor. *Henshilwood v. Hendricks County,* 653 N.E.2d 1062, 1065 (Ind.Ct.App.1995), *trans. denied.* While

the trial court's grant of summary judgment is "clothed with the presumption of validity" and the non-moving party has the burden of demonstrating that the trial court erred, we must carefully scrutinize the trial court's decision to ensure that the non-moving party is not improperly denied his day in court. *Hottinger v. Trugreen Corp.,* 665 N.E.2d 593, 595 (Ind.Ct.App.1996), *trans. denied.*

#### II. Effect of Comparative Fault Act on §§ 343 and 343A(1) of the Restatement (Second) of Torts

Tate initially argues that §§ 343[2] and 343A[3] of the Restatement (Second) of Torts, which set forth the duty of care a possessor of land owes to an invitee, have been superseded by the enactment of the Comparative Fault Act. Specifically, he asserts that these sections of the Restatement are akin to defenses such as contributory negligence and incurred risk, which are contrary to the Comparative Fault Act.

While we have not directly confronted this issue, the persistent application of §§ 343 and 343A in premises liability cases since Indiana's enactment of the Comparative Fault Act implicitly recognizes the continued viability of these sections as part of our common law. *See e.g. Burrell v. Meads,* 569 N.E.2d 637, 639–40 (Ind.1991) (describing § 343 as the best definition of the duty a landowner owes to an invitee); *Ozinga Transp. Systems, Inc. v. Michigan Ash Sales, Inc.,* 676 N.E.2d 379, 384–86 (Ind.Ct. App.1997) (affirming grant of summary judgment for landowner and finding that, pursuant to §§ 343 and 343A, landowner did not breach duty owed because invitee was aware of the slippery nature of the fly ash on which he slipped), *trans. denied; Watson v. Ziegert,* 616 N.E.2d 785, 787–88 (Ind.Ct.App.

**2.** § 343 provides the following definition of the duty a landowner owes to an invitee:
   A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
   (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
   (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

   (c) fails to exercise reasonable care to protect them against the danger.

**3.** § 343A should be read in conjunction with § 343 and provides, in relevant part, as follows:

   (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

1993) (relying on §§ 343 and 343A to affirm summary judgment in favor of landlord, finding no breach of duty where the dangerous conditions were easily observable and where the landowner could reasonably expect that his invitee would discover and take reasonable precautions); *Johnson v. Pettigrew,* 595 N.E.2d 747, 749–53 (Ind.Ct.App.1992) (holding that §§ 343 and 343A also apply to child invitees and finding that the landowners were not required to protect the child from danger on their premises of which he was fully aware, yet consciously disregarded), *trans. denied.*

■ Moreover, Tate's argument fails to recognize that where there is no breach of duty, there is no liability, and, therefore, there is no fault to be compared. We note that §§ 343 and 343A are used to analyze whether a landowner's duty to keep his property in a reasonably safe condition for invitees has been breached. *See Douglass v. Irvin,* 549 N.E.2d 368, 370 (Ind.1990) (explaining the difference between this inquiry and that involved in establishing the defense of incurred risk). This issue of whether a duty has been breached is a prerequisite to liability, regardless of the availability of defenses, and must necessarily be determined before one can reach the issue of comparative fault. Thus, we now explicitly hold that §§ 343 and 343A have survived Indiana's adoption of the Comparative Fault Act.

### III. Breach of Duty

■ Tate alternatively argues that even if §§ 343 and 343A apply, a question of fact remains as to whether Cambridge Commons breached the duty it owed to him as an invitee. Essentially, Tate contends that Cambridge Commons should have reasonably expected that he would have proceeded to encounter the known danger, the ice-covered sidewalk, without taking any precautions, because Tate had a job to do.

We confronted a similar argument in *Ooms v. USX Corp.,* 661 N.E.2d 1250 (Ind.Ct.App. 1996), *trans. denied.* In that case, Ooms, an employee of a trucking company hired to deliver oil to USX, slipped and fell on USX's premises and subsequently filed a negligence action against USX. The designated evidence revealed that oil spills were fairly common and that the area where Ooms parked had oil everywhere on the ground. During the unloading process, drivers were required to stand outside and watch their trucks to be sure that the hoses did not break and leak oil. Drivers had complained several times about the condition of the unloading area to USX, which was responsible for keeping the area clear of hazardous conditions. However, Ooms' employer threatened that if Ooms refused to deliver oil to USX he would be fired. *Id.* at 1251–52.

Based on this evidence, we reversed the trial court's grant of summary judgment in favor of USX. Specifically, we relied on §§ 343 and 343A and found that despite Ooms' awareness of the condition, it was reasonably foreseeable that he would proceed to encounter the known or obvious danger because his only alternative was to forego his employment. We explained that actions may be involuntary when "there is no reasonable opportunity to escape from [the danger] or where the exposure is the result of influence, circumstances or surroundings which are a real inducement to continue despite the danger." *Id.* at 1255. Thus, we found that Ooms' statement that he had been told that he would be fired if he refused to deliver the oil was the "type of 'strong, external compelling circumstance' that a jury may reasonably conclude would render the acceptance of risk involuntary." *Id.* (citing *Get–N–Go, Inc. v. Markins,* 544 N.E.2d 484, 487 (Ind.1989), *modified on reh'g,* 550 N.E.2d 748 (Ind.1990) and Restatement (Second) of Torts § 343A cmt. F, illus. 5).

In the instant case, while we recognize that sometimes the argument that "I had a job to do" is persuasive, we find that *Ooms* is distinguishable. Here, Tate did not encounter the type of "strong, external compelling circumstances" as did Ooms. Tate has designated no evidence that this was his only alternative besides losing his job. Specifically, the designated evidence does not reveal any sort of ultimatum given to Tate by Cambridge Commons that he deliver the drywall immediately or lose the job. Actually, the evidence reveals that Tate was already a week late and that Schmidt was surprised to see

him. Moreover, there is no evidence that Tate unsuccessfully complained about the conditions to Cambridge Commons. Finally, Tate failed to designate any evidence that this was the only path he could have taken to the laundry room.[4] In light of the designated evidence, we find that no material question of fact has been presented as to whether Cambridge Commons should have reasonably expected that Tate would fail to protect himself against the known danger of the icy sidewalk.

## CONCLUSION

Accordingly, we initially find that the enactment of the Comparative Fault Act has not superseded §§ 343 and 343A of the Restatement (Second) of Torts. These sections remain an important part of our common law for determining breach of duty in premises liability cases. Furthermore, we hold that Tate's bare assertion that he had a job to do, without designating any evidence of strong, external, compelling circumstances such as those in *Ooms,* is insufficient to raise a genuine issue of material fact as to whether Cambridge Commons should have reasonably expected that he would cross the icy sidewalk without taking precautions. Therefore, we conclude that the trial court did not err in granting summary judgment in favor of Cambridge Commons.

Judgment affirmed.

RUCKER, J., and BROOK, J., concur.

---

4. We note that in his statement of facts, Tate seems to allude to the fact that walking on the grass would have been a safer alternative. Ap-pellant's Brief at 4 ("Mr. Schmidt did not tell Mr. Tate to walk on the grass instead of the side-walk.").