OZINGA TRANSPORTATION SYSTEMS, INC., Appellant,

v.

MICHIGAN ASH SALES, INC., d/b/a Michigan Ash, Inc., U.S. Ash, Inc., Northern Indiana Public Service Corporation (NIPSCO), James Schroeder, and Angelina Schroeder, Appellees.

James SCHROEDER and Angelina Schroeder, Appellants,

v.

MICHIGAN ASH SALES, INC., d/b/a Michigan Ash, Inc., U.S. Ash, Inc., Northern Indiana Public Service Corporation (NIPSCO), and Ozinga Transportation Systems, Inc., Appellees.

No. 45A04–9603–CV–111.

Court of Appeals of Indiana.

Feb. 14, 1997.

Rehearing Denied May 15, 1997.

---

Gregory J. Tonner, Carl A. Greci, Spangler, Jennings & Dougherty, Merrillville, Stephen Bower, Cohen & Thiros, Merrillville, for Appellants.

Paul A. Rake, Lyle R. Hardman, Eichhorn & Eichhorn, Hammond, Deborah L. Szczepanski, Steven A. Johnson & Associates, Merrillville, for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Plaintiffs-Appellants James and Angelina Schroeder appeal from the trial court's grant of summary judgment in favor of Defendant–Appellee Michigan Ash Sales, Inc., d/b/a Michigan Ash, Inc., U.S. Ash, Inc. ("Michigan Ash") and Defendant–Appellee Northern Indiana Public Service Corporation ("NIPSCO").

Third-Party Defendant–Appellant Ozinga Transportation Systems, Inc. ("Ozinga") appeals from the trial court's grant of summary judgment in favor of NIPSCO on its cross-claim against Michigan Ash and on Michigan Ash's third-party claim against Ozinga on the issue of contractual indemnity.

We affirm the trial court in all respects and remand for further proceedings consistent with this opinion.

### ISSUES

There are two broad issues raised in this appeal. The first is whether the trial court erred in granting summary judgment in favor of NIPSCO and Michigan Ash on Schroeder's negligence claim. The second is whether the trial court erred in granting summary judgment in favor of NIPSCO and Michigan Ash and against Ozinga on the issue of contractual indemnity.

### FACTS AND PROCEDURAL HISTORY

This consolidated appeal involves a negligence claim brought by Schroeder following his slip and fall on NIPSCO's premises while performing work pursuant to his employer's (Ozinga) contract with Michigan Ash. It also involves contractual indemnity claims brought by NIPSCO against Michigan Ash and Michigan Ash against Ozinga.

NIPSCO is a public utility responsible for generating electricity for Northwest Indiana. In November of 1991, NIPSCO owned and operated the Dean Mitchell Generating Station in Gary, Indiana. In March of 1989, NIPSCO and Michigan Ash entered into a contract for Michigan Ash to dispose of and/or market fly ash produced by NIPSCO at its various generating plants in Northwest Indiana. Fly ash is a by-product of the spent coal burned during the production of electricity. The fly ash is accumulated in hoppers and then loaded into trucks for disposal. In November of 1989, Michigan Ash

entered into a contract with Ozinga, whereby Ozinga agreed to remove the fly ash from the Gary plant.

James Schroeder was employed by Ozinga as a truck driver. As part of his employment with Ozinga, Schroeder was required to transport fly ash from the D.H. Mitchell Generating Station to a dump site. On November 29, 1991, Schroeder, while at the D.H. Mitchell site, slipped and fell on wet fly ash and sustained serious back injuries. It is undisputed that on the day of his fall, there was a delay at the fly ash hopper and the trucks began to back up. Schroeder got out of his truck to help the driver in front of him, and as he was returning to his truck, he slipped and fell.

Schroeder filed his complaint in November of 1993, against both NIPSCO and Michigan Ash, alleging negligence and loss of consortium. NIPSCO then filed a cross-claim against Michigan Ash alleging contractual indemnity based on the March 1989 contract between NIPSCO and Michigan Ash (hereinafter "NIPSCO–Michigan Ash Contract"). Following NIPSCO's cross-claim, Michigan Ash filed a third-party complaint against Ozinga alleging contractual indemnity based on the November 1989 contract between Michigan Ash and Ozinga (hereinafter "Michigan Ash–Ozinga Contract").

NIPSCO, Michigan Ash and Ozinga each filed motions for summary judgment seeking judgment as a matter of law on Schroeder's original complaint and on the various cross-claims and third-party claims.[1] The trial court heard consolidated oral argument by the parties on November 8, 1995, and took the matter under advisement.

On December 6, 1995, the trial court entered its order granting summary judgment in favor of NIPSCO and Michigan Ash on the issue of negligence. The trial court also found that Ozinga owed a duty to defend and indemnify NIPSCO and Michigan Ash, and granted summary judgment in favor of NIPSCO and Michigan Ash on their respective claims for contractual indemnification. A pre-appeal conference was held on April 12, 1996, and on April 25, 1996, this court entered an order granting the consolidation of this appeal.

Schroeder appeals on the liability issue and Ozinga appeals on the contractual indemnity issue. We heard oral argument on November 15, 1996, in Rensselaer, Indiana.

## STANDARD OF REVIEW

When reviewing motions for summary judgment, we apply the same standard as the trial court. *Gilliam v. Contractors United, Inc.,* 648 N.E.2d 1236, 1238 (Ind.Ct.App. 1995), *trans. denied.* We consider only those portions of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters designated to the trial court by the moving party for purposes of the motion for summary judgment. Ind.Trial Rule 56(C), (H); *Rosi v. Business Furniture Corp.,* 615 N.E.2d 431, 434 (Ind.1993).

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C); *Tibbs v. Huber, Hunt & Nichols, Inc.,* 668 N.E.2d 248, 249 (Ind.1996). All facts and inferences must be liberally construed in the light most favorable to the nonmoving party. *Haas Carriage, Inc. v. Berna,* 651 N.E.2d 284, 287 (Ind.Ct.App.1995). The party moving for summary judgment bears the burden of making a prima facie showing that there are no

---

1. Michigan Ash's motion for summary judgment on liability issue. (R. 115–126).

 NIPSCO's motion for summary judgment on liability issue. (R. 222–238).

 Schroeder's response to Michigan Ash's motion. (R. 159–166).

 Schroeder's response to NIPSCO's motion. (R. 347).

 Michigan Ash's reply to Schroeder's response. (R. 256–265).

 NIPSCO's motion for summary judgment on indemnification issue. (R. 241–253).

 Michigan Ash's response to NIPSCO's motion. (R. 363–368).

 Michigan Ash's motion for summary judgment on indemnification issue. (R. 266–281).

 Ozinga's opposition to Michigan Ash's motion for summary judgment. (R. 354–361).

 Ozinga's motion for summary judgment on indemnification issue. (R. 283–343).

 Michigan Ash's response to Ozinga's motion. (R. 369–379).

genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Hermann v. Yater*, 631 N.E.2d 511, 513 (Ind.Ct.App.1994), *reh'g denied*. Once the movant satisfies this burden, the burden shifts to the nonmoving party to produce specifically designated facts showing the existence of a genuine issue. *Id.* The trial court's grant of summary judgment is clothed with a presumption of validity, and the appellant bears the burden of demonstrating that the trial court erred. *Rosi*, 615 N.E.2d at 434. We will affirm the grant of summary judgment on any legal theory which is consistent with the designated evidence in the record. *Crist v. K-Mart Corp.*, 653 N.E.2d 140, 142 (Ind.Ct.App.1995), *reh'g denied, trans. denied.*

## DISCUSSION AND DECISION

### I. Summary Judgment in Favor of NIPSCO and Michigan Ash On Schroeder's Negligence Claim

■ Schroeder contends that the trial court erred in granting summary judgment in favor of NIPSCO and Michigan Ash. Schroeder's complaint alleged that NIPSCO and Michigan Ash were negligent in that they failed to properly inspect the premises, failed to properly remove accumulated fly ash, failed to properly store and handle the fly ash and failed to provide a safe and adequate walkway.

Following an evidentiary hearing and review of the designated material, the trial court granted summary judgment in favor of NIPSCO and Michigan Ash on Schroeder's negligence claim as follows:

> The Court now finds that as a matter of law the Defendants NIPSCO and Michigan Ash had surrendered control over the fly ash loading process, as well as the maintenance of the fly ash spills and accumulation in the area of the loading process, to Ozinga. The Court now therefore finds that the Defendants, [NIPSCO] and Michigan Ash ... are entitled to summary judgment as a matter of law.

(R. 403).

Schroeder maintains that there are four genuine issues of material fact which preclude the entry of summary judgment in favor of NIPSCO and Michigan Ash on the issue of liability: (1) whether Michigan Ash assigned all of its duties undertaken in the NIPSCO–Michigan Ash Contract to Ozinga; (2) Whether Michigan Ash's requirement that Ozinga maintain daily communication with Michigan Ash rendered Michigan Ash in control of the NIPSCO property for premises liability purposes; (3) whether Schroeder's fall was attributable to spillage of fly ash or "natural accumulation" of fly ash; and (4) whether Schroeder's fall was partially attributable to defective concrete on the NIPSCO premises.

■ Schroeder's assertions of genuine issues of material fact sound in negligence. To recover on a theory of negligence, a plaintiff must establish three elements: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff; (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff proximately caused by the breach. *Wickey v. Sparks*, 642 N.E.2d 262, 265 (Ind.Ct.App. 1994), *trans. denied; Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991), *reh'g denied.*

■ In order to prevail on a negligence action, the plaintiff must prove all of the essential elements of the cause of action. Hence, a defendant in a negligence action may obtain summary judgment by demonstrating that the undisputed material facts negate at least one element of the plaintiff's claim. *Ramon v. Glenroy Const. Co., Inc.*, 609 N.E.2d 1123, 1128 (Ind.Ct.App.1993), *trans. denied.*

We begin by examining the relevant contract language. Paragraph 8 of the NIPSCO–Michigan Ash Contract enumerates the responsibilities assumed by Michigan Ash with regard to the fly ash removal process. Specifically, Michigan Ash undertook the responsibility to: clean up all spillage on NIPSCO property caused by Michigan Ash personnel or equipment, 8(E); tarp all trucks to minimize fugitive dust emissions in transport, 8(F); and maintain all public roads in a dust free condition, 8(G). Paragraph 7 of the Michigan Ash–Ozinga Contract provides in

relevant part that Ozinga is to "provide cleanup of any spills from truck or ash conditioner and prevent any plug up of equipment." (R. 68). The clear and plain language of the contracts together with the other designated material reveal that ultimately Ozinga had control and possession of the fly ash on the day of the accident and had contractually assumed the duty to remove the fly ash from NIPSCO's premises and clean-up any spillage in the process. Schroeder fails to present triable issues regarding a duty owed to him by Michigan Ash. In the absence of the existence of a duty, there can be no negligence. *Schrum v. Moskaluk,* 655 N.E.2d 561, 565 (Ind.Ct.App.1995), *trans. denied.*

None of the alleged genuine issues raised by Schroeder are sufficient to defeat summary judgment. Even though conflicting facts and inferences may exist regarding certain elements of a claim, summary judgment is proper where there is no real conflict regarding a fact dispositive of the litigation. *Citizens Nat. Bank of Tipton v. Indianapolis Auto Auction,* 592 N.E.2d 1256, 1257 (Ind.Ct. App.1992). First, whether all of Michigan Ash's duties were contractually delegated to Ozinga is not material to the resolution of the case before us. The portions of the contracts bearing on the issue of duty are undisputed as set forth above. Second, Michigan Ash relinquished control of the fly ash to Ozinga when it contracted with Ozinga for the removal of the fly ash. There is no dispute that paragraph three of the Michigan Ash–Ozinga Contract required Ozinga to inform Michigan Ash on a daily basis of the silo levels; however, this communication does not give rise to premises control on the part of Michigan Ash. Third, whether the fly ash came to rest on the ground by a spill or by natural accumulation is not material to the resolution of this case. Under either scenario, there would be no breach of duty on the part of NIPSCO or Michigan Ash. A fact is material only if its existence facilitates the resolution of an issue involved. *Dunifon v. Iovino,* 665 N.E.2d 51 (Ind.Ct.App.1996), *reh'g denied.*

█ As an alternate argument, Schroeder claims that whether NIPSCO surrendered control over the fly ash is not the dispositive inquiry with regard to NIPSCO's liability because his fall was partially caused by a defect on NIPSCO's premises. Specifically, he attempts to create a premises liability issue by arguing that his fall was proximately caused by defective concrete in the roadway.

█ It is undisputed that Schroeder, as the employee of an independent contractor, was an invitee upon NIPSCO's premises. As such, Schroeder was entitled to a higher duty of care. *See Woods v. Qual–Craft Industries, Inc.,* 648 N.E.2d 1198, 1200 (Ind.Ct. App.1995), *trans. denied; Burrell v. Meads,* 569 N.E.2d 637 (Ind.1991), *reh'g denied.* The law on property owner liability is well-settled in Indiana and is also undisputed in this case. Generally, the owner of property is under no duty to provide an independent contractor with a safe place to work, but there is a duty to keep the property in a reasonably safe condition. *Ooms v. USX Corp.,* 661 N.E.2d 1250, 1252 (Ind.Ct.App. 1996), *trans. denied* (citing *Woods,* 648 N.E.2d at 1201). Also, landowners generally owe a duty to warn independent contractors of latent or concealed perils on the premises. *McClure v. Strother,* 570 N.E.2d 1319, 1321 (Ind.Ct.App.1991). Moreover, a landowner is liable for reasonably foreseeable injuries to a contractor's employee caused by hazardous instrumentalities maintained by the landowner on the landowner's premises. *Id.* at 1322; *Denneau v. Indiana & Michigan Electric Co.,* 150 Ind.App. 615, 150 Ind.App. 615, 277 N.E.2d 8 (1971); *Jones v. Indianapolis Power & Light Co.,* 158 Ind.App. 676, 158 Ind. App. 676, 304 N.E.2d 337 (1973); *see also Hoosier Cardinal Corporation v. Brizius,* 136 Ind.App. 363, 136 Ind.App. 363, 199 N.E.2d 481 (1964), *vacated in part by Douglass v. Irvin,* 549 N.E.2d 368 (Ind.1990) (supreme court held that the "equal or superior knowledge" rule should not be used to determine the existence of a duty, but rather breach of duty).

Hence, it is undisputed that NIPSCO owed Schroeder a duty to keep its property in a reasonably safe condition for its business invitees. The dispute arises as to whether NIPSCO breached this duty. The *Burrell*

court adopted the Restatement's definition of this duty as follows:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

*Burrell*, 569 N.E.2d at 639–40 (quoting Restatement (Second) of Torts, § 343 (1965)). Section 343A of the Restatement, which should be read in conjunction with section 343 provides that

[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

In support of his argument, Schroeder designates the affidavit of Steve Siano. Siano was the truck driver in front of Schroeder at the time of the slip and fall. Attached to Siano's affidavit is a picture of the NIPSCO premises wherein Siano marked the spot where the fall occurred. NIPSCO first contends that Schroeder is precluded from now arguing that the unlevel concrete was the proximate cause of his fall when he did not make this argument to the trial court. Contrary to NIPSCO's contentions, Schroeder advanced this argument to the trial court, albeit in sketchy detail, and the materials upon which Schroeder now relies were specifically designated as evidence relied upon by Ozinga in its motion for summary judgment, and they were incorporated by reference in Schroeder's response to NIPSCO's motion for summary judgment. However, NIPSCO makes a valid point when it says that "[o]nce Schroeder claimed and testified that NIPSCO's failure to control fly ash was the proximate cause of his accident, he was no longer entitled to assert, after perceiving the arguments against him, that a purported crack in the concrete was the real culprit." NIPSCO's Brief on Liability at 12. Schroeder's deposition testimony is replete with statements that the concrete was level and smooth:

Q. Okay. Does it matter how much fly ash is on the ground as far as how slippery it is?

A. Where I fell was level concrete—

(R. at 156, Depo. at 50).

Q. Okay. How did you fall?

A. My feet went out from under me, and I went face forward arms outstretched.

Q. Okay. Did you catch your foot on anything?

A. I don't believe so.

Q. Is this a smooth surface that you were walking on?

A. Concrete underneath the fly ash.

Q. Are there rocks or other types of debris?

A. No, just smooth concrete with a layer of fly ash.

Q. Any defects in the concrete, chips, lines?

A. I don't remember. I mean, it wasn't perfect but nothing abnormally wrong with it, no.

Q. Okay. And what would you consider abnormally wrong?

A. No potholes, or anything like that, that would be abnormally wrong.

Q. Okay. Would you have been able to see those even with no ash on the surface.

A. I believe you could if they did exist.

(R. at 156, Depo. at 82).

Q. You said that the concrete was smooth. Do you have any indication that there was any cause for your slipping other than the fly ash?

A. The fly ash and the weather. It was raining that day.

Q. And I guess that's what I'm asking you. What was the cause of your slipping?

A. The combination of the fly ash and being wet.

Q. So you don't believe that the concrete or anything underneath the fly ash had anything to do with it?

A. I wouldn't say, no.

(R. 156, Depo. 141–142).

The undisputed evidence clearly establishes that Schroeder's fall was caused by a combination of fly ash and weather conditions, and not by any sort of premises defect on NIPSCO property. Schroeder's deposition testimony reveals that he was aware of the slippery nature of fly ash. Hence, NIPSCO's comparative knowledge was no greater than that of Schroeder and NIPSCO could not have informed Schroeder of any facts of which he was not already aware. The undisputed evidence is insufficient to create any triable issues with regard to NIPSCO's breach of duty. *See Douglass,* 549 N.E.2d 368; *Watson v. Ziegert,* 616 N.E.2d 785 (Ind. Ct.App.1993); *Davis v. Hoosier Energy Rural Electric Co-op., Inc.,* 19 F.3d 365 (7th Cir.1994) (held that Hoosier did not breach its duty owed to the employee of a company hired to remove fly ash from Hoosier's premises when that employee was injured while performing according to his employer's contract).

Schroeder has failed to advance any genuine issues of material fact to preclude the entry of summary judgment in favor of NIPSCO and Michigan Ash. "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Indiana Limestone v. Staggs,* 672 N.E.2d 1377, 1380 (Ind.Ct.App. 1996) (quoting *Scott v. Bodor, Inc.,* 571 N.E.2d 313, 318 (Ind.Ct.App.1991)).

## II. Summary Judgment in Favor of Michigan Ash and NIPSCO On Issue of Indemnification

Ozinga contends that the indemnification provision contained in the Michigan Ash–Ozinga Contract is invalid and unenforceable for several reasons. After a summary judgment hearing and consideration of the properly designated evidence, the trial court granted summary judgment in favor of NIPSCO and Michigan Ash and against Ozinga on the issue of indemnification. Specifically, the trial court held as follows:

The Court now finds that as a matter of law Defendant Michigan Ash had agreed to indemnify and defend Defendant NIPSCO in regards to the Plaintiffs' claims. The Court further finds that Defendant Ozinga had agreed to defend and indemnify NIPSCO and Michigan Ash against the Plaintiffs' claims herein. The Court now therefore finds that the Defendants, [NIPSCO] and Michigan Ash ... are entitled to summary judgment as a matter of law on their cross-claims for indemnification.

(R. 404). The court went on to find that Michigan Ash owed a duty to NIPSCO to defend and indemnify NIPSCO against loss; and that Ozinga owed a duty to Michigan Ash to defend and indemnify Michigan Ash against loss.

An indemnity clause covers the risk of harm sustained by third persons that might be caused by either the indemnitor (Michigan Ash/Ozinga in this case) or the indemnitee (NIPSCO/Michigan Ash in this case). Basically, its purpose is to shift the financial responsibility to pay damages from the indemnitee to the indemnitor. *Morris v. McDonald's Corp.,* 650 N.E.2d 1219, 1222 (Ind.Ct.App.1995). The NIPSCO–Michigan Ash Contract provides for indemnification as follows:

Michigan shall defend and indemnify and save Northern Indiana and all of Northern Indiana's employees harmless from any and all claims, losses, damages, demands, suits, actions, payments, judgments, costs and expenses, including attorneys' fees, arising or alleged to arise from personal injuries, including death, or damage to property, including the loss of use thereof, and resulting from, arising out of or in connection with this Agreement, including, without limitation, all liability imposed by virtue of any law designed to protect persons employed at the work sites.

Michigan's obligations to indemnify Northern Indiana under this provision shall not apply to any liabilities arising from Northern Indiana's sole negligence or that por-

tion of any liabilities that arise out of Northern Indiana's or any other third parties contributing negligent acts or omissions.

(R. 40–41). The Michigan Ash–Ozinga Contract provides for indemnification as follows:

Ozinga shall defend and indemnify and save NIPSCO and MAC and all of NIPSCO's and MAC's employees harmless from any and all claims, losses, damages, demands, suits, actions, payments, judgements (sic), costs and expenses, including attorneys' fees, arising or alleged to arise from personal injuries, including death, or damage to property, including the loss of use thereof, and resulting from, arising out of or in connection with this Agreement, including, without limitation, all liability imposed by virtue of any law designed to protect persons employed at the work sites.

Ozinga's obligations to indemnify NIPSCO and MAC under this provision shall not apply to any liabilities arising from NIPSCO's or MAC's sole negligence or that portion of any liabilities that arise out of NIPSCO's or MAC's contributing negligent acts or omissions.

(R. 69).

 Ozinga first argues that the Michigan Ash–Ozinga indemnity clause does not expressly define negligence as an area of application. Generally speaking, in the absence of prohibitive legislation, no public policy prevents parties from contracting as they desire. *Moore Heating & Plumbing, Inc. v. Huber, Hunt & Nichols,* 583 N.E.2d 142, 145 (Ind.Ct.App.1991). However, an indemnity clause must clearly define the area of application. *Id.* For example, in *Moore,* Huber was the general contractor for a project at the Central Foundry Division of General Motors in Bedford, Indiana. Moore entered the project as a subcontractor pursuant to a written contract with Huber, which contract contained an indemnification provision. Peterson, an employee of Moore, sustained injuries

when the lift upon which he was working fell. Peterson brought suit against Huber, and Huber, in turn, filed a third-party complaint against Moore for indemnification. The indemnification clause in the Huber–Moore Contract provided in relevant part as follows:

Moore agrees to indemnify Huber against and hold Huber harmless from any and all liability ... from any claim or cause of action of any nature arising while on or near the Job Site ... including claims relating to its ... employees, or by reason of any claim or dispute of any person or entity for damages from any cause directly or indirectly relating to any action or failure to act by Moore, its representatives, employees, subcontractors or suppliers, and whether or not it is alleged that Huber in any way contributed to the alleged wrongdoing ...

*Moore Heating,* 583 N.E.2d at 144. The *Moore* court determined that this indemnification clause "expressly define[ed] negligence as an area of application in clear and unequivocal terms." *Id.* at 146. Specifically, the court held that because the indemnity clause speaks in the language of negligence, that is, in terms of liability, damages, actions, omissions, duties and causation, the words clearly, unequivocally and expressly provide that the indemnification clause applies to negligence. *Id.*

Similarly, the Michigan Ash–Ozinga indemnification contemplates claims, damages, losses, suits and actions arising from personal injuries. These words are also the language of negligence. Hence, taken in context, the words clearly, unequivocally and expressly provide that the indemnification clause applies to negligence.

 Second, much of Ozinga's brief is dedicated to creating an indemnitee negligence claim and thus heighten the level of scrutiny under which this court reviews the indemnification agreement. *See Moore Heating,* 583 N.E.2d at 146 [2] (indemnity for

---

**2.** The *Moore Heating* case contains a typographical error at page 146. The terms "indemnitor" and "indemnitee" have been accidentally inverted. Specifically, the *Moore* court stated as follows:

Therefore, in order to reflect a knowing and willing acceptance of such a harsh burden, the indemnification clause must expressly state, in clear and unequivocal terms, that the indemni-

the indemnitee's own negligence must be specifically, not generally, prescribed); *Weaver v. American Oil Co.*, 257 Ind. 458, 276 N.E.2d 144 (1971) (a party may contract to indemnify itself against its own negligence only if the other party knowingly and willingly agrees to indemnify). This is not a case of indemnitee negligence. Michigan Ash readily concedes that Ozinga is not responsible for indemnifying Michigan Ash for Michigan Ash's own negligence, or any portion of its negligence. Michigan Ash does not seek to exculpate itself for its own negligence; rather, it seeks that Ozinga indemnify it for Ozinga's negligence.

■ In a related issue, Ozinga argues that the indemnification provision is unenforceable because it purports to create an exception not only in the event of NIPSCO and/or Michigan Ash's sole negligence, but also for their contributory negligence. The defendants have maintained, and we agree, that the omission of the words "third parties" directly preceding the contributing negligence language is a scrivener's error. The indemnification clause contained in the NIPSCO–Michigan Ash Contract is identical to the indemnification clause in the Michigan Ash–Ozinga Contract, but for the last sentence referring to "contributing negligence."

In conclusion, NIPSCO and Michigan Ash ultimately surrendered control over the fly ash loading and disposal process as well as maintenance of the fly ash spills and accumulation in the loading area to Ozinga. The clear and unequivocal indemnification language in the Michigan Ash–Ozinga Contract requires Ozinga to defend and indemnify NIPSCO and Michigan Ash.

### CONCLUSION

Viewing the facts and inferences in the light most favorable to Schroeder and Ozinga, we perceive no triable issues of fact with regard to the issues of liability or indemnification. Hence, we affirm the trial court's

tee agrees to indemnify the indemnitor against the indemnitor's own negligence. *Moore,* 583 N.E.2d at 146. The sentence should read as follows:
Therefore, in order to reflect a knowing and willing acceptance of such a harsh burden, the

grant of summary judgment on behalf of NIPSCO and Michigan Ash on Schroeder's negligence complaint and on the claims regarding indemnification. This cause is remanded to the trial court for further proceedings on the indemnification claim and a calculation of NIPSCO and Michigan Ash's costs in defending this action.

We affirm and remand.

HOFFMAN and BAKER, JJ., concur.

indemnification clause must expressly state, in clear and unequivocal terms, that the indemnitor agrees to indemnify the indemnitee against the indemnitee's own negligence.