Steven PAROJCIC, Plaintiff–Appellee,

v.

BETHLEHEM STEEL CORPORATION, Defendant–Appellant.

No. 97–1777.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1997.

Decided Oct. 28, 1997.

Rehearing Denied Nov. 24, 1997.

Brian J. Hurley (argued), R. Bradley Koeppen, Douglas, Alexa, Koeppen & Hurley, Valparaiso, IN, for Plaintiff–Appellee.

Michael S. Baechle, Bachle & Istrabadi, Merrillville, IN, George W. Gessler (argued), Vanessa J. Weathersby, Gessler, Hughes & Socol, Limited, Chicago, IL, for Defendant–Appellant.

Before BAUER, FLAUM and EASTERBROOK, Circuit Judges.

BAUER, Circuit Judge.

In this case, defendant Bethlehem Steel Corporation appeals from a judgment entered after a jury awarded plaintiff Steve Parojcic $76,500 for an injury he suffered while laboring at one of Bethlehem's plants. Bethlehem argues that the verdict was not adequately supported by the evidence. We agree, and we therefore reverse.

## BACKGROUND

The following factual summary, presented in a light most favorable to the jury's verdict, is gleaned from the record in this case. Plaintiff Steve Parojcic ("Parojcic") is a union laborer out of Local 81 in Valparaiso, Indiana. On December 9, 1993, Parojcic began to work for Cardinal Dismantlement Services ("Cardinal") on a project at defendant Bethlehem Steel Corporation's ("Bethlehem") Burns Harbor plant in Burns Harbor, Indiana. The Burns Harbor plant contained a "coke battery," essentially a large oven used to heat coal and produce a substance called coke (not the beverage) which is necessary in the manufacture of steel. There were actually two coke batteries at the Bethlehem plant, which were joined by a walkway: battery number one on the north side of the walkway and battery number two on the south. Cardinal had been hired by Davy–Songer, a general contractor, to assist in the demolition of battery number two.

Bethlehem had hired Davy–Songer, a company with expertise in the field of coke batteries, to engage in a "pad-up" rebuilding of battery number two. In short, Davy–Songer would tear the existing battery down to the concrete pad it rests on and rebuild it from the ground (or, rather, the concrete) up. Davy–Songer and Bethlehem had entered into a "turnkey" contract for the project, meaning that Bethlehem turned the old battery over to Davy–Songer who then shut it down, demolished it, built a new battery, and got it up and running before turning it back over to Bethlehem. Cardinal was involved in the project as an asbestos removal subcontractor, since asbestos present in the battery had to be removed before demolition work could proceed.

On January 31, 1994, the day he was injured, Parojcic was engaged in removing an asbestos mastic from the bolts holding together I-beams in the walkway between batteries one and two. Parojcic and a co-worker, Jim Ryfa ("Ryfa"), arrived at the Bethlehem plant at about 7:00 a.m. After changing clothes and doing other preparatory work, Parojcic and Ryfa got to their actual worksite at about 8:00 a.m. The bolts from which the mastic was to be removed connected beams which were suspended below the ceiling of the walkway, approximately ten feet above the ground. In order to reach the bolts, Parojcic and Ryfa needed to stand on stepladders which were about six or eight feet tall. To remove the mastic, the men stood on the fifth or sixth rung of the ladder, held a bag underneath a bolt, and scraped off the offending matter. After about 45 minutes of scraping, Parojcic had finished one section of beams and moved his ladder to the next section. As Parojcic was climbing up to begin work at his new location, a section of pipe running along the ceiling below the beams broke loose and hit him, knocking him to the ground. The pipe had been held up by tie wires rather than by metal rods and fell after some of the tie wires broke. As a result of the fall, Parojcic injured his knee and was taken to a medical clinic.

Parojcic initiated a lawsuit in the Northern District of Indiana against Bethlehem, which went to trial on November 18, 1996. At trial, Dr. Paul Gruszka, an orthopedic surgeon, testified about the treatment Parojcic needed as a result of his fall. Dr. Gruszka also testified, in grizzly detail, about a previous injury that Parojcic had suffered on that same knee as the result of a high-pressure water accident. That injury had caused fairly severe and permanent damage to Parojcic's knee, and Dr. Gruszka found it impossible to determine exactly how much damage the fall had in fact caused. Other witnesses testified about the pipe involved and the construction process at Bethlehem. After their deliberations, the jury returned with a verdict in favor of Parojcic. It found that he had suffered total damages of $90,000, but also that he was 15% at fault for the accident, and ultimately awarded him $76,500. Judge

Lozano entered judgment on the verdict, and later dismissed Bethlehem's motions for a new trial and for judgment as a matter of law. Bethlehem subsequently filed a timely notice of appeal, and the case is now before this Court. We now turn to a discussion of Bethlehem's contentions on appeal.

## ANALYSIS

■■■ In the trial court, Parojcic pursued his case under a negligence theory of liability. In order to establish a cause of action based on negligence in Indiana, a plaintiff must prove by a preponderance of the evidence that 1) the defendant had a duty to conform his conduct to a standard of care arising from his relationship with the plaintiff; 2) the defendant failed to conform his conduct to that standard; and 3) the plaintiff suffered an injury proximately caused by the breach. *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991). Under Indiana law, employees of an independent contractor (or subcontractor) are considered business invitees, and thus are owed a certain duty of care by a landowner. *Woods v. Qual–Craft Industries, Inc.,* 648 N.E.2d 1198, 1200 (Ind.Ct.App. 1995). In this appeal, Bethlehem does not challenge the fact that Parojcic was an employee of an independent contractor (hence an invitee) and that it thus owed him a duty of care; rather, it argues that this duty was not breached. Our inquiry, then, turns to the duty owed by Bethlehem.

■■■ The law of property owner liability is well settled in Indiana, and is not challenged by either party on appeal. Indiana law starts with the premise that a property owner is generally under no duty to provide independent contractors with a safe place to work, but is under a duty to keep the property in a reasonably safe condition. *Ozinga Transportation Systems, Inc. v. Michigan Ash Sales, Inc.,* 676 N.E.2d 379, 384 (Ind.Ct. App.1997), citing *Ooms v. USX Corp.,* 661 N.E.2d 1250, 1252 (Ind.Ct.App.1996). A landowner also generally has the duty to warn independent contractors of latent or concealed perils located on the premises. *Ozinga,* 676 N.E.2d at 384, citing *McClure v. Strother,* 570 N.E.2d 1319, 1321 (Ind.Ct.App. 1991). Furthermore, a landowner is liable "for reasonably foreseeable injuries to a contractor's employee caused by hazardous instrumentalities maintained by the landowner on the landowner's premises." *Ozinga,* 676 N.E.2d at 384, citing *McClure,* 570 N.E.2d at 1322 (other citations omitted). In summary, the duty owed by a landowner to his business invitees is "to keep its property in a reasonably safe condition...." *Ozinga,* 676 N.E.2d at 384.

In *Burrell v. Meads,* 569 N.E.2d 637 (Ind. 1991), the Indiana Supreme Court adopted the following definition of a landowner's duty to his business invitees:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Id.* at 639–40, quoting Restatement (Second) of Torts § 343 (1965). Section 343A of the Restatement, which is to be read along with § 343, further provides that

> [a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Bethlehem argues that it was not required to inspect its premises before it turned them over to Davy–Songer and that it did not know, and could not reasonably have known, about the ill-supported pipe. Additionally, Bethlehem argues that Parojcic should have discovered the danger presented by the pipe himself, thus eliminating any duty of care it may have owed. We agree with Bethlehem's second contention, and reverse the judgment of the district court.

■■■ As noted above, Bethlehem can only be found to have breached its duty to Parojcic if it should have expected that Parojcic

would not realize the danger posed by the pipe or would fail to protect himself against that danger. Assuming that Bethlehem knew or should have known about the defectively-hung pipe (a subject on which we need not pass), the evidence in this case establishes that Parojcic should have discovered the pipe himself and should have appreciated the danger it posed, and the jury's verdict is incorrect as a matter of law. At trial, Parojcic testified generally about his duties and responsibilities at Cardinal, which included giving safety instructions to other Cardinal employees. He stated that every Cardinal employee was responsible for his own safety and that he told his fellow employees that they needed to examine an area before they began working in it to see if there were any hazards present. Parojcic then testified as follows:

Q: [The need for examining a work area] is particularly true when you're working on a demolition job, because they're tearing things down?

A: Yes.

Q: So if you're going to go into an area and work in that area, you want to look and make sure and see if you can find any hazards before you start working in that area?

A: Yes.

Q: And you told that to the people who worked for you?

A: Yes.

Q: Now, when you went to work on January 31st of 1994, that was the first time you worked in this hallway?

A: Yes.

Q: Did you make an examination when you started work that day to see if there were any hazards that you could see?

A: Yes, I looked around. I mean, I got there. I looked around. Nothing had been done there. Nothing had been touched. It's like the plant was still operating on both sides. That's the way it looked.

Q: Okay. And in making your inspection before you started work that day, did you notice the tie wire up on the pipe?

A: No.

Q: If you had noticed the tie wire up on the pipe, would you have realized that was a hazard?

A: Yes, I would have called my supervisors.

Q: Isn't that something you should have seen if you had inspected the area before you started work?

A: It was up in the beam. It looked like a fairly new pipe. You had other pipes running up there. And that's just something you skip over. You miss, you know.

Q: You just didn't see it?

A: Yes.

Tr. at 210–11 (emphasis added).

This testimony, which was uncontroverted, established that Parojcic should have seen the defective manner in which the pipe was hung but did not. It also established that Parojcic would have appreciated the danger the pipe posed if he had seen it. The plaintiff's own statements, therefore, show that Bethlehem did not breach its duty to him because Bethlehem could have reasonably expected that he would discover the danger to which he was exposed and protect himself from it. Corroborating Parojcic's own admission is defendant's trial exhibit 3, a photograph of the accident site. This photograph reveals a plainly visible pipe, the condition of which could be easily seen by someone on the ground (or, for that matter, on a ladder). Steven Biscuso, a construction manager who worked on the construction project, testified that the pipe shown in the photograph was in the same location as the one which fell on Parojcic, and may have been the very same pipe. Since the pipe and its condition were plainly visible, Bethlehem, even if it had installed the pipe and knew of its existence, reasonably could have expected an invitee to notice its existence and the danger it posed. As such, it is not liable for Parojcic's injuries under Indiana law, and the judgment must be reversed.

In an attempt to diffuse the damage inflicted to this case by his own testimony, Parojcic points out in his brief that Sam Biscuso also testified that he could not tell by looking whether a certain pipe was suspended from the ceiling using rod hangers "just from

viewing it from below." Tr. at 320. This assertion is a mischaracterization of the evidence, however, and does not help Parojcic's case. Biscuso actually testified that he could not tell how a certain pipe was hung by looking at a photograph of the pipe, not that he could not tell by looking at the pipe directly. Biscuso's testimony does not contradict that of Parojcic himself, and the jury could not reasonably have found that the defect in hanging the pipe was hidden and should not have been discovered by Parojcic.

Since Parojcic admitted that he should have seen the incorrectly-hung pipe and that he would have appreciated its danger if he had, Bethlehem did not, as a matter of law, breach its duty to him. The jury's verdict is therefore unsupported by the evidence presented at trial, and it must be reversed.

CONCLUSION

For the reasons set forth above, the judgment of the district court in favor of the plaintiff is REVERSED, and this case is REMANDED with instructions to enter judgment for the defendant.