# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 31 2017, 10:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Edward A. Chapleau
South Bend, Indiana

ATTORNEY FOR APPELLEE

Mark A. Lienhoop
Newby, Lewis, Kaminski &
Jones, LLP
LaPorte, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Health Professionals, Ltd.,

*Appellant/Cross-Appellee,
Third-Party Defendant,*

v.

Michael Gayer, Sheriff,
Pulaski County, Indiana,

*Appellee/Cross-Appellant,
Third-Party Plaintiff*

May 31, 2017

Court of Appeals Case No.
66A04-1612-CT-2752

Appeal from the Pulaski Circuit Court

The Honorable Michael A. Shurn, Judge

Trial Court Cause No.
66C01-1003-CT-4

**Baker, Judge.**

[1] The Pulaski County jail contracted with Health Professionals, Ltd. (Health Professionals), for the provision of healthcare services to jail inmates. The contract included a provision requiring Health Professionals to indemnify and defend the County from claims related to the negligence of Health Professionals. An inmate sued the County, alleging that he had received negligent medical care at the jail. The County demanded that Health Professionals provide a defense from the complaint; Health Professionals refused. The County then filed a third-party complaint against Health Professionals. Following a bench trial, the trial court found in favor of the County.

[2] Health Professionals now appeals, arguing that it had no duty to defend or indemnify the County; the County cross-appeals the amount of damages awarded by the trial court. Finding no error with respect to the judgment in favor of the County, but finding a question with respect to the trial court's intended damages award, we affirm and remand for further proceedings.

## Facts

[3] During the relevant period of time, the County and Health Professionals were in a contractual relationship, pursuant to which Health Professionals provided healthcare services to jail inmates and detainees. The contract between the County and Health Professionals contained the following indemnification provision:

INDEMNIFICATION. HPL will only be responsible for claims resulting from HPL's negligence while performing its duties under this Agreement. If a claim is brought against the COUNTY relating to HPL's negligent performance of its duties under this Agreement, the COUNTY shall promptly notify HPL of the claim. HPL will take all steps necessary to promptly defend and protect the COUNTY including the retention of the defense counsel. However, HPL will not be responsible for any claims arising out of (1) COUNTY or its employees or agents intentionally preventing an inmate from receiving medical care ordered by HPL or its agents, employees or independent contracts [sic]; or (2) negligence of COUNTY's employees or agent [sic] in promptly presenting an ill or injured inmate to HPL for treatment if it should have been obvious to a non-medical individual that the inmate was in serious need of immediate attention.

Tr. Vol. III p. 17.

[4] Health Professionals was responsible for, among other things, prescribing, dispensing, and administering medication; conducting inmate health assessments; and conducting sick calls on a timely basis. Health Professionals agreed to have a physician and/or nurse on call twenty-four hours per day, seven days per week. Additionally, Health Professionals agreed to arrange for hospitalization and other off-site services, such as x-rays, for all inmates who were determined to need such treatment by Health Professionals staff.

[5] The jail staff did not provide inmates with prescription medication or perform medical examinations. More specifically, jail personnel were not trained to administer healthcare other than CPR, defibrillation, minor emergency first aid, and trying to stop bleeding in a life-threatening emergency. Only if no one from

Health Professionals was available and it was obvious to a lay person that an inmate was in serious need of medical attention would jail personnel call an ambulance on their own to transport that inmate to a hospital—relieving jail staff from making such medical decisions was a major reason for contracting with Health Professionals.

[6] In April 2008, Layne Scheffer was an inmate at the jail; Scheffer has a seizure disorder. On April 3, 2008, Scheffer had a grand mal seizure. Jail personnel responded by wrapping a blanket around his head until the seizure subsided and then moved him by wheelchair to a holding cell, where Scheffer complained of right shoulder pain. Jail staff called the Health Professionals nurse to report the situation, and the nurse ordered that Scheffer be given an ice pack and be put on medical watch. Health Professionals staff examined Scheffer on April 4 and on another eight occasions in the subsequent weeks. Health Professionals staff also prescribed medication for Scheffer.

[7] At some point, Health Professionals advised the jail commander to contact the Department of Correction (DOC) to transport Scheffer for an x-ray. There is no evidence that Health Professionals had advised the jail commander of the history of Scheffer's condition or diagnosis. Despite multiple attempts, the jail commander was unable to reach DOC for transportation and advised a Health Professionals nurse of the situation. On April 18, 2008, Health Professionals called the DOC to request that Scheffer be transported for an x-ray, and Scheffer was picked up the same day. The x-ray revealed that Scheffer had fractured his shoulder. Scheffer ended up needing surgery to repair the fracture.

[8]     On March 20, 2010, Scheffer sued the County, alleging that the County had been negligent in its medical care and that its negligence led to his injuries. The County notified Health Professionals of the complaint and demanded that Health Professionals defend and indemnify the County pursuant to the Contract. Health Professionals refused, and the County retained an attorney.

[9]     On May 20, 2010, the County filed a third-party complaint against Health Professionals, alleging that Health Professionals had a duty to defend and indemnify the County pursuant to the indemnification provision in the Contract. The County filed a motion for summary judgment in Scheffer's complaint; on October 5, 2015, the trial court granted that motion based on its conclusion that the County had immunity.

[10]    The trial court held a bench trial on August 10, 2016, in the County's third-party complaint against Health Professionals. On November 11, 2016, the trial court issued an order finding in favor of the County. In relevant part, the trial court found as follows:

> . . . HPL further promised "[i]f a claim is brought against COUNTY relating to HPL's negligent performance of its duties under this Agreement . . . HPL will take all necessary steps necessary to promptly defend and protect the County including the retention of the defense counsel." . . . HPL provided health care to inmates of County under a contract with County. HPL was an unnamed third party for purposes of liability. . . . HPL should have provided a defense with counsel through entry of summary judgment and disposition of the potential appeal. Ironically, HPL most ably through its counsel sat second chair for the entire proceedings but never stepped forward to relieve

> County of its obligation to hire its own counsel. HPL should now be responsible to County for the fees of its counsel to defend Gayer and determine this matter.

Appellant's App. p. 21. The trial court ordered Health Professionals to pay the County damages in the amount of $75,496.48. Health Professionals now appeals, and the County cross-appeals the amount of the damages order.

# Discussion and Decision

# I. Indemnification Provision

[11] The trial court's order here is a general judgment, which we will affirm if there is substantial evidence of probative value supporting the judgment on any legal theory. *Eagledale Enters., LLC v. Cox*, 816 N.E.2d 917, 922 (Ind. Ct. App. 2004). This case also requires us to interpret the Contract, which is a pure question of law to which we apply a de novo standard of review. *Broadbent v. Fifth Third Bank*, 59 N.E.3d 305, 311 (Ind. Ct. App. 2016), *trans. denied*. Our goal is to give effect to the intent of the parties as expressed within the four corners of the document. *Id.*

[12] Health Professionals raises the following arguments: (1) because the trial court granted summary judgment for the County in the underlying complaint, no liability was fixed and no indemnification is owed; (2) the indemnification provision is unenforceable because to apply it here would indemnify the County

for the County's own negligence; and (3) the indemnification provision does not provide for attorney fees.[1]

[13]   The County's claim against Health Professionals is, essentially, a breach of contract claim. The County argues, among other things, that Health Professionals breached its duty to defend the County against Scheffer's negligence claim. Consequently, we must first determine whether, in fact, Health Professionals breached the Contract.

[14]   As noted above, the indemnification provision provides as follows:

> HPL will only be responsible for claims resulting from HPL's negligence while performing its duties under this Agreement. If a claim is brought against the COUNTY *relating to HPL's negligent performance of its duties under this Agreement*, the COUNTY shall promptly notify HPL of the claim. *HPL will take all steps necessary to promptly defend and protect the COUNTY including the retention of the defense counsel.* However, HPL will not be responsible for any claims arising out of (1) COUNTY or its employees or agents intentionally preventing an inmate from receiving medical care ordered by HPL or its agents, employees or independent contracts [sic]; or (2) negligence of COUNTY's employees or agent [sic] in promptly presenting an ill or injured inmate to HPL for treatment if it should have been obvious to a non-medical

---

[1] Health Professionals also argues that the County should have filed a declaratory judgment action rather than a third-party complaint. While it is true that such a course of action would have been permitted—and, indeed, Health Professionals likewise had the option to file a declaratory judgment action seeking a declaration that it had no duty to defend or indemnify the County—there is no authority supporting a proposition that a declaratory action was *required* and a third-party complaint was *prohibited*. This argument is unavailing.

individual that the inmate was in serious need of immediate attention.

Tr. Vol. III p. 17 (emphases added). We must consider, therefore, whether Scheffer's claim against the County "related to" Health Professionals' alleged negligence.

[15] Scheffer's complaint includes two specific acts of alleged negligence: (1) failure to provide appropriate seizure medication and (2) failure to perform an appropriate medical examination after his seizure.[2] As noted above, under the Contract, Health Professionals is responsible for administering prescription medication to and conducting medical examinations of the inmates. Jail personnel were neither trained in nor authorized to take those actions. It is apparent, therefore, that Scheffer's complaint "relates to" allegedly negligent acts by Health Professionals. Consequently, when the County notified Health Professionals of Scheffer's complaint and demanded that Health Professionals defend it, the refusal to defend was a breach of the Contract.

[16] The arguments made by Health Professionals that indemnification is improper—either because Scheffer's complaint was dismissed or because it would indemnify the County for its own alleged negligence—miss the point. The trial court's order here does not result in indemnification. Instead, it

---

[2] The complaint also includes a catch-all allegation covering "any other act of negligence which may be proven at trial of this matter." Appellant's App. p. 26. In theory, this could encompass negligent acts of the County, but even if that were the case, the fact that the two explicit actions included in the complaint "relate to" the actions of Health Professionals means that the duty to defend was triggered.

compensates the County for Health Professionals' breach of its duty to defend the County from Scheffer's lawsuit. *See Henthorne v. Legacy Healthcare, Inc.*, 764 N.E.2d 751, 757 (Ind. Ct. App. 2002) (holding that duty to defend is independent of duty to indemnify).

[17] That leaves us with the question, however, of how the County's damages should be properly quantified. In *Legacy*, Legacy had contracted for Sunshine Rehab to provide therapy to the residents at Legacy, a nursing facility. Sunshine Rehab agreed to defend and indemnify Legacy from all liability, loss, cost, or expense arising from Sunshine Rehab's performance under the contract. The estate of a former Legacy resident sued Legacy and Sunshine Rehab for severe burns to that resident, allegedly caused by a Sunshine Rehab therapist. Sunshine Rehab refused to defend or indemnify Legacy, and Legacy then filed a cross-claim. This Court noted that, as in the instant case, the contract provided that Sunshine Rehab was obligated to defend only for its own negligence and not for Legacy's. *Id.* at 760. The fault apportionment between Sunshine Rehab and Legacy had not yet been determined, however, so this Court remanded for apportionment and calculation of damages. *Id.*

[18] Here, as in *Legacy*, Health Professionals owed a duty to defend the County from Scheffer's complaint but not for claims arising from the County's own negligence. Unlike *Legacy*, which was decided in the context of a summary judgment order, the case before us stems from a bench trial during which the trial court was able to consider evidence relating to the respective fault of the parties. While the trial court did not make an explicit finding with respect to

fault apportionment, we infer from its order that it found that Scheffer's complaint stemmed solely from the alleged negligence of Health Professionals. The following evidence supports that implicit conclusion:

- Health Professionals was responsible for prescribing, dispensing, and administering medication to inmates. It was also responsible for medical examinations and conducting sick calls on a timely basis.
- Jail personnel were not trained on medical procedures aside from emergency life-saving techniques such as CPR.
- Health Professionals conducted all examinations of this inmate.
- The need for and timing of off-site tests such as x-rays was a medical decision made solely by Health Professionals.
- At some point, Health Professionals advised the jail commander to contact the DOC to transport Scheffer for an x-ray. The jail commander telephoned DOC and left four messages over the course of three days. There is no evidence that Health Professionals had advised the jail commander of the specific circumstances of Scheffer's condition.
- After the jail commander was unable to reach DOC, he called a Health Professionals nurse and indicated he had left messages but not actually reached anyone. The nurse replied, "Okay." Tr. Vol. II p. 46.
- On April 18, 2008, Health Professionals called the DOC, who picked up Scheffer that same day. The jail commander testified that DOC had picked up the inmate because they had gotten the commander's messages.

The trial court had the benefit of reviewing all the evidence, observing all the witnesses, and evaluating the credibility of those witnesses. Having done so, it implicitly concluded that Health Professionals was solely responsible for the alleged negligence underlying Scheffer's complaint, and we cannot and will not second-guess that conclusion. There is substantial evidence of probative value supporting the trial court's conclusion that, based on the Contract, Health Professionals "should have provided a defense" to the County from Scheffer's

complaint and its order that Health Professionals "should now be responsible to County for the fees of its counsel" incurred during the defense of Scheffer's claim. Appellant's App. p. 21.

[19] Health Professionals points out that the indemnification provision does not include an attorney fees clause. While that is accurate, it does not mean that a reversal is in order. As noted above, the County's third-party claim against Health Professionals is in the nature of a breach of contract claim. Having established that Health Professionals breached the Contract, the County is entitled to the damages it sustained as a result of that breach, which happens to consist of its incurred attorney fees and litigation costs. In other words, this is not an attorney fee award based on a contractual provision; it is a contractual damages award. *See, e.g.*, *Ozinga Transp. Sys., Inc. v. Ash Sales, Inc.*, 676 N.E.2d 379, 388 (Ind. Ct. App. 1997) (holding that when a party breaches the duty to defend or indemnify, proper damages may include attorney fees and litigation costs). Consequently, it is of no moment that the indemnification provision does not contain an attorney fees clause and we decline to reverse for this reason.

[20] In sum, Health Professionals owed a duty to defend the County from claims relating to the alleged negligence of Health Professionals. The trial court implicitly found that Scheffer's complaint was based solely on the alleged negligence of Health Professionals, and it drew this conclusion having conducted a bench trial, assessed witness credibility, and evaluated and

weighed all of the evidence. There is substantial evidence of probative value supporting the trial court's order; consequently, we affirm.

## II. Cross-Appeal

[21] The County appeals the amount of the trial court's attorney fee award. On July 11, 2016, the County filed a brief in support of a motion for judgment on the evidence. That brief indicated that, as of that date, the total amount of incurred attorney fees and litigation costs was $75,496.48. At the August 10, 2016, bench trial, evidence was presented that, as of that date, the total amount had increased to $83,622.09. The trial court ordered Health Professionals to pay damages in the amount of $75,496.48.

[22] The County insists that "[i]t is clear that the trial court intended to award the entire amount of the attorney fees and expenses incurred by the County" in defending Scheffer's claim and prosecuting the third-party complaint. Appellee's Br. p. 39-40. It argues, therefore, that the trial court may have made an inadvertent error by selecting the July 11 amount rather than the August 10 amount of fees incurred.

[23] The County has indicated its intent to seek further compensation for the attorney fees and costs incurred defending this appeal. If, in fact, the trial court made an inadvertent error in its original calculation of attorney fees, that error could be corrected upon request at this anticipated hearing.

The judgment of the trial court is affirmed and remanded for further proceedings.

Barnes, J., and Crone, J., concur.